## CONNOLLY v. CENTRAL VERMONT R. CO.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

1. RAILROAD COMPANIES—INJURIES TO STOCK—LIABILITY FOR OPEN GATEWAYS.

Laws 1890, c. 565, § 32, require railroad companies to erect, and thereafter maintain, fences to prevent cattle from coming upon the road. Held, that a railroad company was liable for killing plaintiff's horses, which, after straying upon the land of another, passed upon the railroad through a barway in the fence, which had been opened a long time prior to the accident, though it did not appear by whom it was opened. Herrick, J., dissenting.

2. CREDIBILITY—INTERESTED WITNESS—PROVINCE OF JURY.

The credibility of defendant's employé, who testified that he had put up the bars a short time before the accident, was properly left to the jury under instructions that if the witness' testimony was relied upon, plaintiff could not recover, and that, if they believed said testimony, the jury had no right to disregard it for any capricious motive.

Appeal from circuit court.

Action by Jerry Connolly, Sr., against the Central Vermont Railroad Company, to recover the value of certain horses alleged to have been killed by defendant. There was a judgment for plaintiff, entered upon the verdict of a jury, and defendant appeals. Affirmed.

Argued before PARKER, P. J., LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Louis Hasbrouck, for appellant.
John A. Smith, for respondent.

PUTNAM, J. The plaintiff's horses, at 7 o'clock on the evening of April 15, 1894, were at the farm of his son Jerry Connolly. During the night they strayed to the pasture of one Cushing, a mile and a half distant, and from the pasture, through an open barway on the south side of the defendant's railroad, onto its tracks, where they were struck by an engine and killed. There was sufficient evidence produced to justify a finding by the jury that the barway had remained open during the preceding winter, and up to within a week of the accident, and it was not denied that it was open on the night that the horses were killed. Who opened and left it open does not appear. The plaintiff brought this action to recover the value of the horses, and obtained a judgment, from which the defendant appeals.

Under the provisions of the railroad law (Laws 1890, c. 565, § 32), it was the duty of the defendant to "erect, and thereafter maintain, fences on the side of its road, of height and strength sufficient to prevent cattle, horses, sheep and hogs from coming upon the road from the adjacent lands." The bars placed at the place in question

for the accommodation of the adjoining landowners were a part of the fence it was bound to maintain. It cannot be deemed to maintain a fence sufficient to prevent cattle and horses from getting upon its tracks if it knowingly suffered openings to remain in such fence, either by the bars which formed a part thereof being taken out or otherwise. It will be observed that the statute cast the duty of maintaining the fence, not upon the adjoining landowner, but upon the corporation. It is probable that had Cushing, the adjoining landowner, opened and left open the barway in question, and afterwards his cattle had strayed upon the track, he could not have recovered their value of the defendant, for the reason that in such a supposed case his negligence would have caused or contributed to the injury. Thus, in Diamond Brick Co. v. New York Cent. & H. R. R. Co., 58 Hun, 396, 12 N. Y. Supp. 22, cited by the learned counsel for the appellant, where the plaintiff had pastured his horse in the field of one owning land adjoining the defendant's road, from which there was a gate for the accommodation of such owner leading thereon, and this gate the owner habitually left open, it was said in the opinion:

"If this is neglect on the part of the company arising from a failure to shut the gate, why is it not neglect on the part of the owner to leave it open while using it for the purpose of the farm from day to day, all summer, or a great portion of the summer? She took her risk, * * * and hired the pasturage to the plaintiff upon the same condition."

Under the circumstances of that case, it was held that the plaintiff could not recover. The facts in this case are different. The plaintiff was not the owner of the pasture in question. His horses strayed into such pasture from his son's premises, a mile and a half distant; also it was not shown that Cushing, the owner of the pasture, for whose accommodation the barway was made in the fence, ever opened and left said barway open. It was shown that he went through the barway once when it was open, and did not close it; but it did not appear that on that occasion he took out the bars. It is not to be presumed that Cushing was responsible for the barway being open and remaining open during the winter and spring preceding the accident. It was admitted that the horses were killed before the pasturing season had commenced, and therefore Cushing probably had had no business in the pasture field since the season before. Hence the barway, being a part of the fence placed by defendant on its south line, was shown to have remained open for a long period preceding the accident. Who opened it, and who left it open, does not appear. We think defendant, who, under the statute, was compelled to maintain the fence so as to prevent animals from straying on its tracks, was negligent in not closing up this opening in the fence.

In Dayton v. Railroad Co., 81 Hun, 284, 30 N. Y. Supp. 783, where the facts were quite similar to those appearing in this case, the general term of the Fifth department sustained a judgment in favor of the plaintiff. In Spinner v. Railroad Co., 6 Hun, 600, affirmed 67 N. Y. 153, Mullin, J., said that:

"A company is bound to see to it that all gates on its roads are kept closed, and it is liable if they are left open, even by the persons for whose convenience they are constructed. Such owner owes no duty to the owners of cattle that may be in the highways or adjoining fields."

The same doctrine is assumed in Hungerford v. Railroad Co., 46 Hun, 339. In that case Martin, J., remarks:

"The defendant was bound to build and keep in repair fences along the side of the tracks, with gates or bars for the use of adjoining owners at farm crossings; and such gates or bars were a part of the fence it was bound to maintain and keep in repair. * * * Before he [plaintiff] could recover on the ground of negligence based on the fact that the horses passed onto the track through the barway, he was bound to prove that the defendant had had actual notice that the bars were down, or that they had been down for such a length of time that the defendant might be presumed to have had notice thereof through its agents or servants."

In Chapman v. Railroad Co., 33 N. Y. 369, the action was brought to recover damages caused by the alleged negligence of the defendant in leaving open a pair of bars, as in this case. The bars were left open by one Ryan, employed by the defendant as a day laborer, in the evening, when he was engaged in his own business. But it was found that, by the terms of his employment, after his day labor was over, if he saw anything amiss, he was to give attention to it; and he was held to be a servant of the company. Campbell, J., remarked:

"If the bars had been taken down by others, and Ryan, occupying the relation he did to the company, had seen them, or had been notified, there can be no doubt but it would have been his duty at once to put them up. That he took them down himself can make no difference. The neglect of duty was in leaving them down."

We think the court below properly submitted the case to the jury, and that the verdict is sustained by the evidence. We can discover no error in the charge of the trial judge in regard to the credibility of the witness De Losh. He instructed the jury that if De Losh's testimony was relied upon, the plaintiff could not recover; that, if he put up the bars on Saturday before the accident, sufficient time had not elapsed thereafter to give the defendant constructive notice that they were down. He said to the jury:

"If, however, you think the testimony of Le Losh is not correct, or cannot be relied upon, and it is a question for you, then you have the right," etc. "If you believe De Losh's testimony,—and you have no right to disregard it from any capricious motive,—you must give weight to his testimony, unless there are some serious reasons for distrusting or doubting it."

The testimony of De Losh to a certain extent conflicted with that of witnesses produced by the plaintiff. But if there was not in fact any such conflict, De Losh was a servant of the defendant. He had testified that it was his duty, when he walked over the track, to put the bars up when he saw them down. He was therefore an interested witness, naturally desiring to shield himself from any responsibility arising from his neglect to perform this duty. A verdict for the plaintiff would necessarily convict him of a failure to perform that duty. Under the circumstances the question of his credibility was properly left to the jury. Elwood v. Telegraph Co.,

45 N. Y. 549; Wohlfahrt v. Beckert, 92 N. Y. 490; Kavanagh v. Wilson, 70 N. Y. 177; Gildersleeve v. Landon, 73 N. Y. 609; Koehler v. Adler, 78 N. Y. 287.

The judgment should be affirmed, with costs.

LANDON and MERWIN, JJ., concur.

PARKER, P. J. I concur with considerable reluctance. Undoubtedly the company was liable if the bars had been down sufficiently long to give it notice that they were down; but, if the witness De Losh put them up on Saturday, the company was not liable for their being down on Sunday night. Now, why should not De Losh be believed? There is nothing whatever to discredit his statement. Possibly he lied in order to conceal an omission of duty on his part, but ought the mere fact that it was his duty to put them up lead us to conclude that he lies when he says he did? I confess it difficult to distinguish the case from the reasoning in Wohlfahrt v. Beckert, 92 N. Y. 490, and therefore I concur, but I do not like it.

HERRICK, J. (dissenting). I cannot assent to the doctrine of Spinner v. Railroad Co., 6 Hun, 600–603, that "when a gate is put in a fence for the convenience of the owner of lands adjoining a railroad, and it is not kept shut, the fence is not maintained within the true intent and meaning of the section above cited"; the section above cited being the one providing for the building and maintaining of fences by railroad corporations. The railroad should not be held liable to the same extent for an open gate or bar way provided for the private use of adjoining proprietors that it is when a portion of the fence is broken down, burned, or otherwise destroyed. Maintaining a fence within the meaning of the statute, it seems to me, is altogether a different matter from keeping gateways constantly closed. The gate or bar way is for the very purpose of making a convenient opening through the fence, by which means the people can pass and repass. It is meant to be used from time to time, and it cannot be possible that a railroad company must constantly keep guard over the use by the adjoining proprietors of such a gateway, made for their benefit, under penalty of being held liable to the same extent that it would be if some of the fence had been destroyed or broken down. This is not like the case of Spinner v. Railroad Co., 67 N. Y. 153, which was the case of an original private farm crossing being diverted from its purpose, and being used by the railroad company for the benefit of its customers for shipping and unshipping freight. Doubtless, where the railroad company has knowledge that such private bar or gate way is habitually left open, or is out of repair, so that it cannot be closed, or that it has been broken down or destroyed, so that it no longer fulfilled its office, they might be held liable, the same as when any other portion of the fence has been broken down or destroyed. The case of Hungerford v. Railroad Co., 46 Hun, 339, is not a case that sustains the contention of the plaintiff in this action. There it was simply held that gates or

barways are part of the fence that the railroad company is bound to maintain and keep in repair, and it could only be held liable if the defendant had actual notice that the bars were down, or that they had been down for such a length of time that the defendant might be presumed to have had notice through its agents or servants. In this case the only proof of notice to the defendant is that one of its servants found the barway open and closed it on Saturday, as the accident in question happened on Monday. It is true that the witness is an interested witness, and that the jury had the right to disbelieve his testimony. At the same time it is the only evidence that the defendant had notice that such bars were open, and was coupled with the statement that they were thereupon closed.