[Civil No. 2343.   Filed June 27, 1925.]

[237 Pac. 384.]

# ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. CHARLES A. MATTHEWS, Appellee.

1. RAILROADS—STATUTORY LIABILITY FOR INJURY TO ANIMALS ON UNFENCED LINE, STATED.—While Civil Code of 1913, paragraph 3779, has not placed upon railroads a duty to fence their lines, it has placed upon them an absolute liability for injury to animals by their locomotives or cars on any portion of its line within the state, unless railroad was fenced at place of accident as provided by paragraphs 3769 and 3770, or the owner of the animals immediately contributed to accident.

2. RAILROADS—GATES IN RIGHT OF WAY FENCE AT FARM CROSSING TO ACCOMMODATE SETTLERS VIOLATION OF STATUTORY REQUIREMENT.— Where defendant company provided gates in its right of way fence at "farm crossing" to accommodate settlers, and plaintiff's mares thereby wandered upon its lines from the public highway and were killed by a train, *held*, that opening across lines not conforming to Civil Code of 1913, paragraphs 3769 and 3770, as to width and cattle-guards, defendant's statutory liability to owners of animals injured thereby was absolute under paragraph 3779 for failure to maintain a continuous fence.

3. APPEAL AND ERROR — DEFENDANT CANNOT COMPLAIN OF DAMAGES AWARDED, WHERE TESTIMONY PLACED HIGHER VALUE ON ANIMALS KILLED.—In action against railway company, defendant cannot complain that there was no proof of market value of animals killed, where competent and uncontroverted testimony that "they were worth $375" was introduced, and the jury's verdict was for a less amount.

See (1) 33 Cyc., p. 1171.   (2) 33 Cyc., p. 1207.   (3) 4 C. J., p. 922.

APPEAL from a judgment of the Superior Court of the County of Graham.   W. R. Chambers, Judge. Affirmed.

1.   Liability of railroad company for injuries to animals caused by failure to maintain fence, see notes in 24 A. L. R. 1057; 31 L. R. A. (N. S.) 861; 49 L. R. A. 625.   See, also, 11 R. C. L. 902.

Mr. Charles L. Rawlins and Mr. George H. Rawlins, for Appellant.

Mr. E. L. Spriggs, for Appellee.

ROSS, J.—Matthews sued the Arizona Eastern Railroad Company for the value of three mares killed by one of its trains, on the night of December 7, 1922, at what is called in the briefs a "farm crossing" located near Glenbar, Graham county.

The defendant had fenced its right of way at this point, but to accommodate settlers in the immediate neighborhood, by allowing them a crossing over its track and right of way, had caused to be made gates in such right of way fences. Much, if not most, of the time these gates were left open by persons using the crossing. The defendant's section foreman and those working under him always closed gates when found open. There were no cattle-guards at the gate openings or elsewhere at such crossing, and when the gates were left open there was nothing by way of fence or otherwise to prevent livestock from freely entering on the right of way and upon defendant's tracks. Plaintiff's animals wandered into the east gate from the public highway and got upon the track, and were run down and killed by one of defendant's trains.

The defendant's liability is not predicated upon negligence in operating its train, but upon its failure to fence its railroad track with a legal fence. The warrant for this liability is found in the statutory law. The legislature, by paragraph 3779 of the Civil Code, has not imposed upon railroads the duty of fencing their lines, but it has said if any railroad company has not done so it shall be liable in damages to any person whose animals shall be killed or injured by any of its locomotives or cars on any portion of its

line within the state, unless it be shown that the owner of such stock, his agent or servant, immediately contributed to such killing or injury. The liability under this statute is absolute and can only be defeated by showing: (1) That the railroad was fenced at the place of accident as provided by law, or (2) that the owner of the animal immediately contributed to the accident.

Matthews is not charged with being at fault, and the question left is as to the sufficiency of the fence. It is the contention of defendant that it had fully complied with the law as to fencing its railroad track, and that it is not liable if the gates it placed in fence for the accommodation of settlers was left open by some of them and plaintiff's mares entered through such opening on to its tracks and were killed.

There is no statute providing for or authorizing what was done by defendant in making this crossing. The arrangement seems to have been in addition to and independent of the statutory requirements as to openings over and across the defendant's railroad track. What was done is without legislative sanction. Paragraphs 3769 and 3770 of the Civil Code are the governing law in that regard, and their purport is that every railroad in fencing its line shall leave at least one opening every three miles sixty feet wide, with cattle-guards at each end and fences run to guards so as to prevent cattle going on to the inclosed track and right of way; and by paragraph 3771 any trestle or bridge sufficiently high for cattle to go under shall also be left open. There is no pretense of following or complying with these provisions of the law in the present case.

The defendant's intention and purpose in supplying the neighborhood with gates may be commendable, but in doing so it departed from the explicit legislative rule as to the width of opening, as also the means to be employed to keep livestock from going

on to the railroad track and right of way. We construe the statute as placing on a railroad the positive duty, if it would fence its lines, of making a continuous unbroken fence (where the right exists) sufficient to turn livestock, with openings of the kind and character provided for in the law; and we hold that any other kind of fence or opening does not meet the requirements of the law, and consequently will not exempt the railroad from the statutory liability.

The rule defendant contends for, to the effect that a party for whose benefit a private gate is made owes a duty to keep it closed, and if he does not neither he nor a third party can recover from the railroad for killed or injured stock entering upon its track through such gate, is all right in those states making it the duty of the railroad to provide such private gates. One of the cases cited by defendant announces this rule, but hastens to add:

"Of course, our decision does not apply to those cases where openings or intervals in fences not authorized by law have been made." *Missouri, K. & T. Ry. Co.* v. *Hanacek,* 93 Tex. 446, 55 S. W. 1117.

The question as to who left the gate open is unimportant since it was the positive duty of defendant to see to it that there was a good and sufficient fence or other barrier sufficient to turn livestock. This duty defendant had to discharge, and if it chose to substitute gates for the openings provided by law, it assumed the duty of seeing that such gates were kept closed so that livestock could not wander on to its tracks or right of way.

We conclude that the following instruction (assigned as error by defendant) contains a correct statement of the law:

"You are instructed that in all cases where the live stock of any person is injured or killed by a locomotive or cars on any portion of the line of any railroad within this state, unfenced by a good and sufficient

fence or other barrier sufficient to turn live stock, the company or corporation running such locomotive or cars shall be liable in damage therefor to the owner of such live stock, unless it be shown, upon the trial of any action instituted for the recovery of such damages, that the owner of such live stock, his agents or servants, immediately contributed to such killing or injury.''

In this case it would have been entirely proper for the court to have advised the jury that the fences ''were not sufficient to turn livestock, and that if they found the plaintiff's mares entered on defendant's track through an open gate and were killed by train, it would be their duty to find a verdict in favor of plaintiff, unless they also found plaintiff, his agent or servant, immediately contributed to such killing.

This disposes of all of defendant's assignments except one, wherein it is contended there was no proof of the market value of the animals. The plaintiff testified, without objection, that he thought the reasonable value was $350. The witness Follett, after stating that he was acquainted with the market value of such animals in the community where they were killed, said: ''They were worth $375.'' It was the market value the last witness testified to, and his testimony was not in any way controverted. The jury's verdict was for only $225. Since by competent evidence the value was shown to be greater, defendant has no reason to complain on that score.

In *Payne* v. *Clifford,* 24 Ariz. 489, 211 Pac. 566, we had occasion to discuss a railroad's liability for stock killed at a public crossing, but the rule in such case would have no application here, since there is no right to fence a public crossing, whereas here the right to fence admittedly existed.

For the reasons given we are of the opinion the judgment should be affirmed, and it is so ordered.

McALISTER, C. J., and LOCKWOOD, J., concur.