HILDEBRAND v. CHICAGO B. & Q. R. R.
(No. 1744; Jan. 4, 1933; 17 Pac. (2d) 651)

176

For former opinion, see 13 Pac. (2d) 1081.

For the appellant the cause was argued orally on rehearing by *R. H. Nichols,* of Casper, Wyoming, and *Joseph Garst,* of Douglas, Wyoming.

178

For respondent, there was a brief on rehearing by *Dawson and Daniels,* of Douglas, Wyoming, and oral argument by *John D. Dawson.*

BLUME, Justice.

This is an action instituted by the plaintiff Hildebrand against the defendant railroad company to recover damages for cattle killed on the latter's right of way. The petition was in three counts, claiming damages for cattle killed in August, 1929, in August, 1930, and in December, 1930. Judgment was in favor of the plaintiff, and that judgment was affirmed in this court. 13 Pac. (2d) 1081.

A rehearing was granted as to the first and second causes of action; that is to say, for the causes of action arising in August, 1929 and in August, 1930, and the case has been re-argued orally and ably, the points urged being mentioned hereafter. The situation, as to both causes of action are similar, and both can be decided upon the same grounds, without mentioning the special ground on which the first cause of action was decided in the original opinion, and to make the situation clear, the essential facts, not all heretofore set out, will be stated here.

It is admitted that the cattle in question were killed on defendant's tracks by its trains, and that this was at a farm where the railroad company was required to fence, or at least the case was tried on that theory. There is testimony indicating that those killed in August, 1929, entered the right of way through an open gate at a place about two miles west of plaintiff's land. The right of way at that place was under the supervision of defendant's section foreman Reas. The nature of the gate and crossing is not shown. Reas testified that he closed the gate on the evening before the cattle were killed; that he often found the gate open, in fact nearly every morning. The cattle killed in August, 1930, entered the right of way through a gate and crossing situated just east of plaintiff's land, the crossing leading to a tank farm. The right of way along that place was under the supervision of defendant's section foreman Day. He testified that he closed the gate the evening before the cattle were killed; that it was in good condition; that it was open practically all the time; that he would close it every time that he saw it open, sometimes three or four times a day. This crossing was apparently constructed mainly for the benefit of the people going to and from the tank farm. Seemingly both of the crossings in question were private, neither being provided with cattle guards, but there is nothing in the record to indicate that they are "farm crossings" contemplated by

Section 38-236, Rev. St. 1931, or that they were otherwise required or permitted by statute; in fact the record indicates the contrary in connection with the crossing east of plaintiff's land.

1. The first point urged herein is that we erred in stating in the original opinion that "the burden of proving want of negligence" was on the railroad company. The statement does not refer to the burden of proof in the case as a whole, but merely to the burden of the evidence at a particular stage of the case. It was made in view of the provision of Section 96-117, Rev. St. 1931, that a plaintiff in a case of this character makes out a prima facie case for recovery by proving the loss or injury of his property, and in view of the admission that the cattle in question were killed on defendant's right of way by its trains, and the evidence as to the ownership of the property and the value thereof. We have been favored, both orally and in the briefs, with an analytical discussion as to the difference between burden of proof and burden of the evidence, and our attention is called to a lengthy consideration of that subject in the case of First National Bank v. Ford, 30 Wyo. 110, 216 Pac. 691, 31 A. L. R. 1441. Our statement in the original opinion, and above mentioned, accords with that made in Elliott on Railroads (3rd Ed.) Sec. 1729, where the author says:

"Thus statutes are in force which make the mere proof of the killing of or injury to an animal by the cars or locomotives of a railway company sufficient to raise a presumption of negligence against it. As soon as this presumption arises the plaintiff has made out a prima facie case and will recover unless the defendant introduces evidence to show that it exercised due care and was not guilty of negligence."

And in 52 C. J. 109, it is said:

"In order to rebut the presumption (created by statute), defendant must show affirmatively that there was no negligence, or default in performance of a statutory duty, directing and confining his proof to the particular acts of negligence or statutory default charged in plaintiff's pleading."

And this statement is in line with one made in First National Bank v. Ford, supra, where we said that when a party has made a prima facie case, and this case is not met, "the verdict or judgment must necessarily go for the party in whose favor the presumption operates." It should, however, be borne in mind in that connection that there is a difference in the effect of presumptions, if we include inferences and so-called—newly-coined—pseudo-presumptions under that term; that the term presumption of law—said to be the only true presumption—being a deduction which the law directs to be made from particular facts, has no absolute boundary which is equally limited by all the courts, and that when a prima facie case is made by the aid of what are recognized as merely inferences or pseudo-presumptions, and is not rebutted, this simply authorizes, but does not compel, the jury to find in favor of the party so making such case. Sweeney v. Erving, 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D (involving the doctrine of *res ipsa loquitor*); Niebel v. Winslow, 88 N. J. L. 191, 95 A. 995; McDaniel v. R. R. Co., 190 N. C. 474, 130 S. E. 208; Wigmore, Ev. (2nd Ed.) Sec. 2491; Jones, Ev. (2nd Ed.) Sec. 27. The case at bar, we think, comes within the rule stated in National Bank v. Ford, supra. Howsoever that may be, while the burden of proof of the case as a whole was on the plaintiff in this case, the prima facie case made under the statute would in any event authorize a verdict in plaintiff's favor, unless this prima facie case was met by evidence which dissipated it. But counsel for defendant strenuously contend that such prima facie case need not be wholly met; that a presumption will not stand against

or in the face of evidence, and, if we understand them correctly, that when any evidence at all is introduced on the subject to which the prima facie case relates, then the presumption, or prima facie case, is by that fact alone removed from the case; that, accordingly, when *some* evidence of care on the part of the railroad company was introduced, the prima facie case made under the statute, or the presumption created thereby, disappeared, whether the evidence to cause such appearance was adequate for that purpose or not. Specifically, counsel claim that when they introduced evidence to the effect that the gates in question here were closed on the evening before the cattle were killed, that ended the presumption herein. Counsel for the plaintiff understands the contention to mean that plaintiff was entitled to the benefit of the statutory presumption only in a default case. We doubt, however, that it was intended to go to that extreme. This subject has been discussed as though it were one of presumptions. And counsel cannot be far from right in assuming, as they do, that our statute, stated in different language, means that when the fact of injury is shown (and ownership and value), it shall be prima facie evidence, or it shall be presumed as a matter of law, that the railroad company is liable, or that it has been so negligent in the performance of its duty so as to entitle the plaintiff to recover unless such prima facie evidence or presumption is rebutted. The presumption may be considered as one of law. Elliott on Ev., Sec. 86. And while the term prima facie case is not synonymous with that of presumption (Stack v. Baking Co., 283 Mo. 396, 419, 420, 223 S. W. 89)—for instance, a prima facie case may be made purely by evidence, or by evidence plus a presumption—yet the effect of a prima facie case is similar, and sometimes identical with that of a presumption in respect to the shifting of the burden of going forward. Hence cases of either class should illustrate the point now under consideration.

The subject of presumption, and of prima facie cases, has been considered by the courts so often that we hesitate to discuss it. Yet the precise contention made by counsel appears not to have been considered at any great length by any cases which we have found, although it has many times been touched upon, but generally incidentally. There are cases which use expressions apparently bearing out the contention here made, but it will be found in every instance, we think, that the court simply did not deem it necessary to discuss the subject more fully. Jones on Evidence (2nd Ed.) Sec. 32, says that a presumption ''by reason of the slightest rebutting evidence, topples utterly out of consideration of the trior of facts.'' But in Section 41, the same author, apparently treating of the same kind of presumption, says that ''it may be said generally that such a presumption derives its force from the law, and hence should only be held to be rebutted when clear and satisfactory proof to the contrary has been adduced.'' The first of these statements might be true in some cases, for presumptions do not all have the same force. But generally speaking, the statement is not borne out by the authorities, or it is at least apt to be misleading. Furthermore, we shall leave out of consideration in this discussion presumptions arising in criminal cases, particularly the presumption of innocence.

It is, of course, true that a prima facie case, or a presumption, disappears in the face of evidence. But what evidence? We said in First National Bank v. Ford, supra, as follows:

''But * * * the prima facie case so made need not be overcome by a preponderance of the evidence, or evidence of greater weight; but needs only to be balanced, put in equipoise by some evidence worthy of credence, and if that is done, the burden of the evidence has been met and shifts back to the party having the burden of proof.''

Here we clearly indicated that a prima facie case must be met by evidence adequate to balance it or put it in equipoise. The statement is quoted with approval by Jones on Evidence (2nd Ed.) Sec. 482, and by several decisions, and it is otherwise supported by ample authority. Thus in Gibbs v. Bank, 123 Iowa 736, 742, 99 N. W. 703, 705, the court said:

"When a prima facie case is made out by presumption or otherwise, in order to destroy its effect and shift the burden of producing further evidence, the party denying it must produce evidence tending to negative the claim asserted to a point where, if no more testimony is given, the adversary cannot win by a preponderance of the evidence."

In Peters v. Lohr, 24 S. D. 607, 124 N. W. 853, 855, in which a statute making certain facts prima facie evidence was involved, the court said:

"A presumption will serve in the place of evidence in favor of one party or the other until *prima facie evidence* has been adduced by the opposite party. * * *. The presumption, when *the opposite party has produced prima facie evidence,* has spent its force and served its purpose, and the party then, in whose favor the presumption operated must meet his opponent's prima facie evidence with evidence and not presumptions." (Italics are ours.)

Similar language was used in Hansen v. R. & N. Co., 97 Ore. 190, 188 Pac. 963, 970, 191 Pac. 655, involving a presumption arising from the loss of goods by a bailee, and in which the court disapproved of an instruction that the presumption must be overcome—that is to say, must be overthrown by a preponderance of the evidence, the court saying:

"After the bailor has made a prima facie case, the bailee must assume the burden of going forward; and if he does take up the burden he may relieve himself of it

and shift back to the bailor the duty of going forward, by deproving the bailor's case of its prima facie quality and *making a prima facie case for himself.*" (Italics are ours.)

In Powers v. Russell, 13 Pick. (Mass.) 69, cited with approval in Klunk v. Railway Co., 74 O. S. 125, 77 N. E. 752, the court said:

"When a party having the burden of proof establishes a prima facie case, and no proof to the contrary is offered, he will prevail. Therefore the other party, if he would avoid the effect of such prima facie case, must produce evidence of equal or greater weight to balance and control it, or he will fail."

The Supreme Court of California, in Cody v. Market Street R. Co., 148 Cal. 90, 82 Pac. 666, 667, said that when a presumption of negligence arises and the plaintiff has made a prima facie case, the defendant must answer it, or the plaintiff will prevail. The court then proceeds:

"But it does no more than to require him to make such showing as to want of negligence as will leave the jury, with all the evidence before it, unsatisfied as to whether there was negligence on defendant's part, and if, on the whole case the scale does not preponderate in favor of the presumption of negligence and against the defendant's proof, plaintiff is not entitled to a verdict, for he has not established his case by a preponderance of evidence as he was compelled to do under the well settled rule."

Similar language was used in Cleveland etc. R. Co. v. Newell, 104 Ind. 264, 3 N. E. 836, 841, 54 Am. Rep. 312, where the court said:

"The presumption and proof of negligence might have been overthrown, if the weight of the explanatory facts proven had risen to such a degree and level as that the jury on the whole evidence could not have found whether the defendant was negligent or not."

Courts have used different terminology in expressing the same thought. Thus it is said in Moore v. Wooten, (Tex.) 280 S. W. 742, that a presumption cannot stand against unimpeached positive evidence. In E. S. Company v. Rochelow, (R. I.) 161 Atl. 145, and Colangelo v. Colangelo, 46 R. I. 138, 125 Atl. 285, the court states that a presumption ceases to operate when *satisfactory* evidence to rebut it has been produced. In Atlantic Coast L. R. Co. v. Drake, 21 Ga. App. 81, 94 S. E. 65, 67, the court made, perhaps, too great a requirement when it held that a presumption of negligence is rebutted, if "there is positive, unequivocal and uncontradicted evidence, affirmatively showing that the company was without fault." In New York it is held, in cases in which certain facts were held to create prima facie evidence of responsibility, that "the presumption growing out of a prima facie case * * * remains only so long as there is no *substantial* evidence to the contrary. When that is offered, the presumption disappears, and unless met by further proof there is nothing to justify a finding based upon it." Potts v. Perdee, 220 N. Y. 431, 116 N. E. 78, 79, 8 A. L. R. 785; Carroll v. Knickerbocker, 218 N. Y. 435, 113 N. E. 507, Ann. Cas. 1918 B 540; Chaika v. Vanderberg, 252 N. Y. 101, 169 N. E. 103. The language here used is, we think, in substantial harmony with that used by the other courts heretofore quoted. And *substantial* evidence, sufficient to meet a presumption or prima facie case, implies, it would seem, that it must be credible. McIver v. Schwartz, 50 R. I. 68, 145 Atl. 101; Mar Shee v. Assur. Corp., 190 Cal. 1, 210 Pac. 269. Hence it was held in Chaika v. Vanderberg, supra, that if the evidence offered to meet the presumption is rejected as unworthy of belief, the prima facie case remains unrebutted. See in that connection Pariso v. Towse, 45 Fed. (2d) 962.

In some cases it is held that when all the facts are in evidence the statutory prima facie case, or presumption,

has no application. 52 C. J. 108. In Stoeber v. Ry. Co., 40 N. D. 121, 168 N. W. 562, where that rule was laid down, there was not only evidence to contradict the presumption, but the preponderance of the evidence showed no negligence. In Chamberlayne, Modern Law of Evidence, Sec. 1083, it is said that "when evidence is introduced on the point covered by the presumption of law, it is now *functus officio* so far as sustaining the burden of evidence is concerned. It drops out of sight." The author cites Diefenthaler v. Hall, 96 Ill. App. 639, which merely holds that it is error to assume that a presumption prevails, if there is evidence to rebut it. Dugas v. Estiletts, 5 La. Ann. 559, is also cited. That case merely holds that a presumption may (generally) be rebutted. Befay v. Wheeler, 84 Wisc. 135, 53 N. W. 1121, 1123, is also cited. That case involved the presumption of regularity of official acts, and the court said that "it is a mere presumption of law, which operates only in case of absence of evidence. It disappears entirely in the presence of positive, uncontradicted evidence upon the subject." United States v. Wiggins, 14 Peters 344, 10 L. Ed. 481, also is cited. In that case the court said that prima facie evidence of a fact is such as, in judgment of law, is sufficient to establish the fact, and if not rebutted, remains sufficient for the purpose. The court then reviewed the evidence, and instead of holding that the prima facie case disappeared upon the introduction of *some* evidence, held that it had not been met and that the presumption prevailed. And in Kelly v. Jackson, 6 Peters 628, 8 L. Ed. 523, the court seems to approve of the rule that in order to cause a prima facie case to vanish it must be contradicted or disproved by *controlling* evidence.

There are cases which hold that when all the facts are shown, the court should not give any instruction as to a presumption which the law has created. That is true, for instance, in First National Bank v. Adams, 82 Nebr. 801, 118 N. W. 1055, 1056, involving a presumption of owner-

ship from the fact of possession. The facts had been shown. That evidence directly contradicting the presumption has to appear is plain from the statement of the court that "a presumption means a rule of law that courts and judges shall draw a particular inference from a particular fact or from particular evidence, unless and until the truth of such inference be *disproved.*" See Ryan v. R. Co., 46 Utah 530, 151 Pac. 71. In Mobile etc. R. Co. v. Hicks, 91 Miss. 273, 298, 46 So. 360, 370, 124 Am. St. Rep. 679, a case of personal injury, the court had before it a statute reading as follows: "In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of the locomotives or cars of such company, shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury. This section shall also apply to passengers and employes of railroad companies." The court said:

"All the facts available about this casualty were brought before the court and jury. The case should have been left to the jury, to be decided upon facts and not upon the presumption. But it was insisted by counsel below that the facts do not explain the accident, and that the burden is upon defendant, even after it has shown all the facts in its possession, and has given the jury all the available information, yet to go further and furnish a satisfactory explanation of the occurrence. This certainly is not what the statute means. A presumption is permitted to be used in those cases where the facts are not known and where they are in possession of the defendant. This court has said over and over that it does not serve the purpose of the plaintiff in cases where the facts are all before the court. Such presumption does not require the defendant at its peril to explain every accident that happens, but only to show the facts about it as far as they can be shown."

And in Gulf R. Co. v. Brown, 138 Miss. 39, 102 So. 855, 859, also involving personal injury, the same court said:

"It has often been held by this court that where the facts are in evidence, the jury must determine the negligence or lack of negligence from the evidence and not from the statute. * * * It is not true that the law requires the facts to exonerate the railroad company from blame. The law requires the facts to be produced, and if the facts are not produced in evidence, the presumption prevails; but when the facts are produced the jury must decide the question from the facts, and unless the facts show negligence, the plaintiff does not prevail."

If all the detailed facts are shown, and these do not disclose negligence on the part of the railroad company, they necessarily, of course, disclose ordinary care, and hence the statutory presumption would be balanced and put in equipoise. Whether or not an instruction on presumption should be altogether left out in such case, or in the opposite case, namely, when the facts disclose negligence, need not be determined herein, since no question of instructions is involved herein, and since, as will appear more clearly later, all the facts were not disclosed in the case at bar.

The Mississippi statute above mentioned was construed by the United States Supreme Court in the case of Mobile etc. R. Co. v. Turnipseed, 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912 A 463, and the constitutionality of the statute as construed by the courts of Mississippi was upheld. In the course of the opinion, the court said:

"The statutory effect of the rule is to provide that evidence of an injury arising from the actual operation of trains shall create an inference of negligence, which is the main fact in issue. The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done the inference is at an end, and the question of negligence is one for the jury, upon all of the evidence. In default of such evidence, the defendant, in a civil case, must lose, for the prima facie case is enough as matter of law."

In Western & A. R. R. v. Henderson, 279 U. S. 639, 49 Sup. Ct. 445, 73 L. Ed. 884 the court had under consideration a statute of Georgia (Civ. Code 1910, Sec. 2780) which provided that a railroad company should be liable for damages to stock or persons "unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." The case involved damages for the death of a person, caused by a collision of an automobile and a train at a crossing. The Georgia courts "permitted the presumption (under the statute) to be considered and weighed as evidence against the testimony of the defendant's witnesses tending affirmatively to prove such operation was not negligent in any respect." It was held that there must be a rational connection between what is proved and what is to be inferred under a statute; that a statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the fourteenth amendment; that legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty or property; that the mere fact of a collision between a railway train and a vehicle at a highway grade crossing furnishes no basis for any inference as to whether the accident was caused by negligence of the railway company or of the traveler on the highway, or of both, or without fault of any one, and that the presumption raised under the Georgia statute, as construed by the courts of that state, is unreasonable and arbitrary and violates the due process clause. Commenting upon the Mississippi statute above mentioned, the court said that it created "merely a temporary inference of fact that vanished upon the introduction of opposing evidence."

The constitutionality of our statute on the subject under discussion is not involved herein, although it is apparent that we must give that statute a construction, if possible, not in conflict with the decision just mentioned. We have cited these cases merely on the point contended for herein

that the introduction of *some* evidence will cause the statutory prima facie case, or presumption, to disappear. The cases state that the evidence must be "to the contrary," or must be "opposing evidence"—in other words, it must, in a case like that at bar, negative negligence on the part of the railroad company. And we have no doubt that the court, particularly in view of its former decisions above cited, would not be satisfied with merely a scintilla of evidence, but would require evidence fairly adequate to balance the presumption or put it in equipoise. And that, we think, is the meaning also of a statement on this subject in Wigmore on Ev. (2nd Ed.) Sec. 2491.

A number of cases involving the presumption of negligence of a railroad company have been decided since the decision of Western & A. R. R. Co. v. Henderson, supra, and generally with that decision in mind. In St. Louis S. W. Ry. Co. v. Vaughan, 180 Ark. 559, 21 S. W. (2d) 971, and St. Louis & San Francisco Ry. Co. v. Grant, 185 Ark. 222, 46 S. W. (2d) 640, it was held that though there was *some* evidence of care on the part of the railroad company, the statutory presumption had not been properly met. In St. Louis & San Francisco Ry. Co. v. Cole, 181 Ark. 780, 27 S. W. (2d) 992, the court, while stating that the presumption of negligence is at an end when the railroad company introduces evidence to contradict it, also reaffirms the rule that:

"When the evidence shows that an injury was caused by the operation of a train, the presumption is that the company operating the train is guilty of negligence, and the burden is upon such company to prove that it was not guilty of negligence."

In Missouri Pac. Ry. Co. v. Foltz, 182 Ark. 941, 33 S. W. (2d) 51, 52, involving the killing of a dog, the trial court gave an instruction that the jury would be warranted in finding in favor of plaintiff in the event that it found that the dog was struck and killed by the operation of a train

unless they should find from the proof in the case that the defendant exercised ordinary care, and further: "The killing of the dog being proved, the presumption of negligence arises, but this presumption is not conclusive and may be overcome by evidence to the contrary." The court held that these instructions were not contrary to the decision of Western & A. R. R. Co. v. Henderson, and could not be construed to mean that the presumption should be weighed as evidence against the testimony showing the exercise of due care. And the court concluded:

"Therefore, if the engineer and fireman only had witnessed the occurrence and had testified to a state of facts establishing ordinary care on their part, and there were no circumstances which might negative such testimony, then there could have been no finding of negligence, and the presumption would have disappeared, as we have frequently held."

The Supreme Court of Alabama in Louisville & N. R. Co. v. Green, 222 Ala. 557, 133 So. 294, after referring to the two cases of the United States Supreme Court last mentioned, said of their statute:

"Our statute simply means that when injury is shown by a railroad, the plaintiff makes out a prima facie case, and that the burden is then shifted to the railroad to rebut or overcome said prima facie case by introducing evidence *sufficient to overcome the said prima facie case of the plaintiff.*" (Italics are ours.)

In Louisville & N. R. Co. v. Sellers, 222 Ala. 615, 134 So. 8, the court in stating that the evidence was sufficient to show that a yearling was struck and injured by defendant's train, further said:

"The court correctly charged the jury that if they found such to be the fact, the burden was then upon defendant to show that there was no negligence on the part of the company or its agents. * * * The statute puts the burden on

defendant, when the conditions exist which are named in it, *to refute all negligence of the company or its agents."* (Italics are ours.)

In Seaboard Air Line Ry. Co. v. Watson, (Fla.) 137 So. 719, 721, the following language was used:

"Under the issue of not guilty, the injury being shown to have been committed by the defendant in the running of its train, the presumption that it was through the negligence of the railroad that the injury was inflicted obtains against the railroad, but such presumption does not outweigh proofs, and it ceases *when the company makes it appear that its agents have exercised all ordinary and reasonable care and diligence.* * * * all that the statute does in this state in creating a presumption is thereby to cast upon the railroad company the burden of affirmatively showing that its agents *exercised all ordinary and reasonable care and diligence, and here the statutory presumption ends."* (Italics are ours.)

We fear we may have discussed at too great a length a proposition which may seem to be self-evident, and we have done so only because of the insistence of counsel for defendant that our conception of the prima facie case under the statute has been wrong, and because we deemed it advisable to settle as far as possible a point which would be apt to be urged again. We think that this review shows clearly the correctness of our statement in the original opinion, that when the injury was admitted (assuming that ownership and value also had been shown), the burden to show want of negligence shifted to defendant, although, of course, an instruction to the jury should be more complete. We think the review also establishes the fact that merely *some* evidence on the part of the railroad company is not sufficient to cause the presumption to vanish, but that it must be adequate to meet, that is to say, to balance, the prima facie case, unless, perchance, all the facts are shown in detail. A gentle tapping on a window pane will not break it; so a mere attempt to refute a presumption should

not cause it to vanish, if it is of any value at all. Take, for instance, the presumption of sanity. Evidence that a man at one time, not too remote, acted queerly, would be relevant, but by itself ought not to be sufficient to rebut the presumption. Or take the presumption of legitimacy. Testimony of opportunity for the woman and a stranger for illicit intercourse at and about the time of conception would be relevant, but ought not, by itself, to be sufficient to put the presumption in equipoise. In the case at bar, testimony that the railroad company constructed a proper fence would be relevant, but by itself would show little as to the care in connection with its maintenance. So a certain care exercised in connection with one kind of gate—for instance one constructed under the requirements of the statute—might be wholly inadequate to show the proper care in connection with another kind of gate—for instance, one constructed for the railroad's own convenience. It may sometimes be a nice question as to what evidence is adequate in a particular case. An interesting illustration is given by Prof. Wigmore in Section 2491, supra, where he says that if death be the issue, and the fact of absence of seven years unheard from be conceded, but the opponent offers evidence that the absentee, before leaving, proclaimed his intention of staying away for ten years, until the prosecution for crime was barred, this satisfies the opponent's duty of producing evidence, and removes the presumption, although the jury will be at liberty to give the fact of absence that probative force which they think is proper.

The prima facie case made under our statute can only be met by evidence which shows the contrary or opposite of the negligence presumed, and that can consist only of evidence which will show ordinary care—namely, that degree of care which under the same or similar circumstances might reasonably be expected from an ordinarily prudent person. 45 C. J. 683. To go only part way, merely showing care insufficient under the circumstances, would not be much better than a mere attempt to meet the prima facie

case, and would not be adequate. It has been said that "there can be no partial exercise of ordinary care. It exists in completeness, or it is totally wanting, in any given case." 45 C. J. 687. When such ordinary care has been shown, the presumption will vanish. Under the ruling of Western A. R. R. Co. v. Henderson, supra—and our statute may well be construed in conformity therewith—it cannot then continue and be weighed against such evidence. That evidence must be met by other evidence and not by the statutory presumption. If the fact upon which the presumption is based has any probative force, that will, of course, remain, along with other evidence. Wigmore, supra, Sec. 2491. If the evidence of ordinary care is clear, credible and uncontradicted, the verdict must be for the defendant. Alabama Great Southern R. Co. v. Forester, 43 Ga. App. 66, 157 S. E. 924; Missouri Pac. R. Co. v. Foltz, supra. In the contrary case, the issue will be for the jury to decide. Sather v. Giaconi, 110 Or. 433, 220 Pac. 740.

2. We have already stated that not all the facts having a bearing on the case at bar were shown. The record does not disclose whether the gates were constructed for the defendant's own convenience, or as a farm crossing under Section 38-236, Rev. St. 1931, or for the benefit or convenience of some one else. The point is vital, for the care required is not the same under all circumstances. Thus it is generally held that the duty to keep a gate closed at a farm crossing constructed under the requirements or permission of the statute is primarily upon the owner of the crossing. 52 C. J. 58. And it becomes important, accordingly, to determine whose duty it was to show the facts in this connection. Counsel for the defendant contend that in the absence of evidence on the subject, we should assume that the crossing was a farm crossing, or a crossing which is required or permitted by our statute. But we do not think so. It was the duty of the railroad company, when a prima facie case for plaintiff had been made, to produce evidence of ordinary

care. Evidence as to what kind of crossings were involved herein would seem to be part of its burden. While not specifically discussed, that is the rule recognized in Texas & P. Ry. Co. v. Webb, 102 Tex. 210, 114 S. W. 1171; Galveston etc. Ry. Co. v. Wessendorf, (Tex. Civ. App.) 39 S. W. 132; Houston etc. Ry. Co. v. Lee, (Tex. Civ. App.) 135 S. W. 694. In fact, counsel for defendant themselves recognized that as the proper rule in the court below, for they affirmatively pleaded that the gates at the crossings in question were erected to enable third parties to cross the right of way to and from their lands divided by the right of way—in other words, that the crossings were such as are required by the statute. But aside from that, the subject was peculiarly within the knowledge of the railroad company, and this itself should be sufficient to place upon it the burden of showing the facts in this connection. 22 C. J. 81. Hence, when the defendant produced no witness on this point, we may well assume that had any been called, their testimony would have been adverse, and would have shown that the crossings in question were not such as the statute permits or requires. Benedict v. Bank, (Wyo.) 13 Pac. (2d) 573, 574, and cases cited. We shall treat the situation accordingly.

3. In the original opinion we cited Texas & Pac. Ry. Co. v. Webb, supra; Galveston etc. Ry. Co. v. Wessendorf, supra; Winters v. Hines, 207 Mo. App. 412, 229 S. W. 281, as holding that when a railroad company constructs a gate at a place where it is not required or permitted to do so by the statute, it is bound to see that the gate is kept closed. To these cases should be added Houston etc. Ry. Co. v. Lee, supra, and the rather interesting case of Arizona Eastern R. Co. v. Mathews, 28 Ariz. 443, 237 Pac. 384. Most of these cases proceed on the theory that to put up a gate which may readily be opened by any one in such a place is a failure in the duty of construction, but, it would seem, that when such fence is kept in the same condition day after day, the failure of duty may be referred as well, if not more, to the maintenance thereof. Further, the decisions generally

198

say that the railroad company in such case assumes the risk of keeping such gates closed. They seem to consider the company in such case as an insurer of that being done. But that is more or less mere terminology, and may well be translated into terms of negligence. That term is defined by Judge Cooley as "the failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury." 45 C. J. 631. There must be the necessity of the performance of a duty and a failure to perform it. 45 C. J. 632. If a railroad company does not construct a fence in the manner required by law, so as to hold stock, the company would not, ordinarily at least, exercise that degree of care which the circumstances demand, and it would be negligent, since, except possibly in very exceptional cases, no reasonable excuse could be given for the failure to perform its duty. But ordinary care—care required by the circumstances—would, generally, be something different in connection with the maintenance of fences already properly constructed; if, for instance, a stranger deliberately clips a fence, the failure of ordinary care on the part of the railroad company could hardly be said to commence before it receives knowledge of the act. It would not be guilty of want of ordinary care in failing to do something which is beyond its control. And while there are some cases which appear to make the railroad an insurer in the maintenance of its fences (Saccamonno v. Great Northern Ry. Co., 30 Ida. 513, 166 Pac. 267; Scheffer v. R. Co., 53 Mont. 302, 163 Pac. 565; Texas Central Ry. Co. v. Pruitt, 49 Tex. Civ. App. 370, 110 S. W. 966), it is not at all necessary for us, in this case at least, to go beyond the statement contained in the case of Wyo. & N. W. Ry. Co. v. Snavely, 23 Wyo. 324, 150 Pac. 760, that a railroad company must exercise (merely) reasonable care in the maintenance of its fences, and in so far as the original opinion may indicate the contrary, it is hereby modified.

What, then, constitutes ordinary care in a case such as we have before us? The ordinary fence is a solid fence. It is not composed of a number of easily separable sections, or gates. The purpose of the statute is to have the company .construct and maintain a fence which holds stock, although, as stated, it need not be held that the company should be responsible for something over which it has no control. Under Section 38-236, Rev. St. 1931, the statute doubtless gives the railroad company the right to insert a proper gate in a fence so as to give an owner of land on both sides of the right of way a farm crossing. There may be other provisions in the statute in connection with ways of necessity, when it would be proper to insert a gate. It cannot be denied that when a gate is inserted in a fence, that place of the fence is not as readily maintained as is a solid fence, on account of the fact, exemplified by common experience, that gates are often left open. Leaving a gate open which a railroad company should construct under statutory provisions, is frequently beyond its control. But when the statute does not require or permit such company to insert a gate, the insertion of the gate itself is in the absolute control of the company, or it may provide such gate with lock and key, or it may take other steps, which would insure the gate being kept closed, so that cattle would not pass through it. We need not say whether or not the company would be guilty of want of ordinary care by the mere fact of inserting gates which are easily left open, at such a place, and which are not provided with the indicated safeguards. But when we find, as we do in the case at bar, that such gates were continuously left open, to the knowledge of the railroad company, and that no proper steps were taken to correct that situation, an independent question arises. The point has to some extent been discussed in Connolly v. R. Co., 4 App. Div. 221, 38 N. Y. S. 587, 590; Jacksonville etc. Ry. Co. v. Harris, 33 Fla. 217, 14 So. 726, 39 Am. St. Rep. 127; Spinner v. R. R. Co., 67 N. Y. 153, 158. In the Connolly case, Judge Herrick, in a dissenting opinion in which

the railroad company was held liable under a situation similar to that presented here, said:

‘‘Doubtless, where the railroad company has knowledge that such private bar or gateway is habitually left open * * * so that it no longer fulfilled its office, they might be held liable.’’

In the Spinner case the court said in part:

‘‘It (the railroad company) was bound to know, too, that when (the gate) opened at all, with its assent or acquiescence it was in contravention of the statute requiring it to maintain a fence at that place, which was one of the sides of its road * * *. For the duty is to maintain its fence in good repair, which means in such state and condition that it will turn orderly cattle, or of the height and strength of a division fence required by law, and if it takes part in or permits a removal of any part of the fence, which act, from the incidents of it, results to its knowledge or notice in the fence not being kept up, it does not maintain it in that good repair. * * * *If it permits, invites or shares in, such use of the gateway as, to its knowledge or notice, results in the gate not serving the end of a fence, it fails in its duty. * * ** When it has knowledge or notice that the gate is customarily left open, or when, from the manner of the use of it, it has notice that such result is likely to happen, it is in statutory default if it does not see to the closing of it when the use of it is over for the day or other shorter period.’’ (Italics are ours.)

The last clause here quoted does not, we think, modify the other portions of the quotation and means, we think, that when the railroad company knows that a gate is customarily left open, either during the day time or the night, it must see to it that it is closed whenever it is so left open. The New York case was followed and cited with approval in the Florida case cited above. There can be little doubt that when a gate is left open, customarily or ‘‘practically all the time,’’ the danger to cattle in the vicinity is nearly the same as though the fence were completely torn down.

A fence with such a gateway does not subserve the purposes of the fence required by statute. And when that fact has been brought to the knowledge of the railroad company, as in this case, and it fails to take steps to correct that situation, it may well be found to be negligent in the performance of its duty. If such gate is apt to be left open again the minute the section foreman passes out of sight, then it cannot be said, at least as a matter of law, that for him to shut it every time he finds it open constitutes due care. Surely it is not unreasonable to say that the "circumstances justly demand" greater vigilance in such a case.

We think, accordingly, that, independent of the prima facie case made under the staute, there was sufficient evidence in the case which authorized the jury to find a verdict in favor of the plaintiff. Hence we adhere to the conclusion arrived at in the original opinion that the judgment of the trial court should be affirmed.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.