Gabbielli, J.
(dissenting). I am constrained to dissent from the bizarre result achieved in this case. First, there is no claim that the defendant did not commit the charged crime, as indeed there cannot be on this record. The defendant merely interposes a defense of insanity. Second, despite the fact that this court, as conceded in the majority opinion, embraces the concept that the presumption of sanity presents a question for the jury to decide, even if rebuttal proof is offered, the majority nonetheless is prepared to say, as a matter of law, that the guilty verdict should be set aside and the defendant be discharged. We examine their holding.
They conclude, as 1 believe they must, that ‘1 the rule prevailing in this State [is that] the presumption [of sanity] remains as evidence until the end of the case and that the introduction of rebuttal proof merely presents a jury question as to .whether the presumption has been overcome.” And they further hold that “ [t]oday a majority of the court * * * finds no reason to disturb these precedents at this time, in this case ” *484 (emphasis supplied). Nonetheless in these circumstances, and where the only defense is insanity and there is no denial (and indeed cannot be) of the commission of the heinous act here charged, the majority is concluding that “ whether the presumption survived as evidence or not the People failed to establish the defendant’s guilt beyond a reasonable doubt ”. Upon even the analysis posited by the majority, such a statement lacks both logic and record support for a holding that as a matter of law guilt was not proved beyond a reasonable doubt. In our view this simply cannot be justified. We are no more empowered to reach such a conclusion than we could upon any other matter of a purely evidentiary nature in which the triers of the fact are to speak. The situation thus presented minimally suggests an anamoly.
The People went into this case armed with the venerable presumption of defendant’s sanity. This presumption has, historically in New York, served two functions. First, it eliminates the need for the prosecutor to introduce evidence of defendant’s sanity as part of his case in chief in situations where defendant’s mental capabilities are not in issue. Second, in cases where defendant does put his sanity in issue, the presumption, as a procedural device, drops from the case; but the ‘ ‘ human experience ’ ’ element underlying the presumption —■ that sanity is the normal condition of man — stays in the case and can be considered by the jury along with whatever other evidence, if any, the prosecutor offers to sustain his burden of proving sanity beyond a reasonable doubt. (See Richardson, Evidence [10th ed.], § 63.)
In addition to those cases discussed by the majority which show that the “ presumption ” of sanity goes to the jury, note also Begley v. Prudential Ins. Co. of Amer. (1 N Y 2d 530, 533) where we stated the following rule: ‘ ‘ When death has resulted from violence, the presumption against suicide does more than shift the burden of proof and upon having done so disappears from the case; it continues to the end of the case and if a fair question of fact is presented as to whether death was due to suicide or accident, then the jury should answer accident [citation] ”.
However one may quibble with the use here of the suicide presumption as applied in civil cases, against insurance com- *485 panics, we should not apply the presumption against suicide in a different procedural manner than the presumption of sanity where both presumptions are based on facts about human nature which the courts have long accepted. Thus, it is just as well established that the odds lie against a person’s being insane as a person’s committing suicide. If this underlying factor can be left in, at least as a permissible inference in cases where evidence of suicide is introduced, then the same rule ought to apply in criminal cases where the defendant introduces evidence of insanity. The chief difference in the two sorts of cases is, of course, that in the latter the beneficiary of the lingering inference, the prosecutor, has a much heavier burden of persuasion.
As noted above, the “ lingering inference ” rule although not called such, has been the rule in New York (Richardson, Evidence [10th ed.], § 63). The practice easiest of application, in cases where the presumption based on human nature serves the purpose of locating the burden of producing evidence, is best stated in O’Dea v. Amodeo (118 Conn. 58, 61-62) as follows: “ It is also true that when the presumption rests upon common experience and inherent probability, it exhausts itself when the defendant produces substantial countervailing evidence * * * Such presumptions * * * are based upon the fact that common experience and reason justify the drawing of a certain inference from the circumstances of a given situation, [and] it follows that, although the presumption as such disappears from the case when substantial countervailing evidence is produced, the facts and circumstances which give rise to it remain and afford the basis for a like inference by the trier, whether court or jury.”*
*486 This analysis is solely for the purpose of suggesting that it would make for greater ease of application and understanding if wé dealt with these “ common experience ” presumptions on the basis of both their procedural and evidential worth, and afix appropriate labels. Thus, we can deal with this device as a presumption so long as it serves the procedural purpose of locating the burden of producing evidence. When the procedural burden is satisfied we should no longer refer to the device as a “ presumption ”, but, rather, as an “ inference ” based on common human experience that can be weighed by the jury.
Assuming, then, that we should retain the practice of allowing fact finders to consider the lingering inference underlying a “ common experience ” presumption as evidence to be weighed against contrary evidence produced by defendant, what is the effect in this case? Since the only evidence of sanity supporting the prosecutor’s case in chief results from the lingering inference, do we say that any evidence produced by defendant creates a reasonable doubt as a matter of law so as to cause dismissal of the indictment?
“ A gentle tapping on a window pane will not break it; so a mere attempt to refute a presumption [read, ‘ underlying inference ’] should not cause it to vanish, if it is of any value at all ” (Hildebrand v. Chicago, B. & O. R. R., 45 Wyo. 175, 193-194). Certainly in some cases the quality of the defendant’s evidence of insanity will be such as clearly to create a reasonable doubt. However, it should not be held, as the majority opinion suggests, that just the evidence of insanity in this case can remove this inference. In the instant case defendant’s psychiatrist, Dr. Faver, who met and examined defendant for the first time six months following the commission of the crime, rendered the opinion that defendant was “ insane ” at the time the crime was committed. The support for this opinion on direct exan - ination was that defendant was suffering from a schizophrenic reaction at the time of the examination, plus defendant’s medical history. On cross-examination Dr. Faver was extensively exam *487 ined and received a thorough going over in which it was brought out that he did not agree with the legal definition of insanity; that his determination as to defendant’s September, 1966 insanity after his first examination was based solely on what defendant told him; and that defendant was in a state of remission at the time of eventual trial in May, 1968 so as to be legally responsible for any criminal conduct he engaged in at that time. When asked why he could be so sure defendant was not in a state of remission in September, 1966, not having seen defendant at or even near that time, nor otherwise seeing any medical records pertaining to defendant made at or near that time, Dr. Faver, without any explanation whatsoever, simply said that he could and, in fact did, make such a determination (obviously on the basis of his examinations months later). This cross-examination proved Dr. Faver’s “ reasonably certain ” medical opinion to be devoid of all underlying support or at least the jury could so find. Nothing was left but a baseless opinion by a witness hired so to testify. This, together with other evidence that defendant at several past times had been treated for mental disorders, can hardly be said to create reasonable doubt as a matter of law.
Most assuredly, defendant had no burden of persuasion in the matter. This rested entirely upon the prosecutor. And, looking at the situation from this standpoint, it cannot be said that the prosecutor did not sustain this burden. First, he possessed the lingering inference of sanity. Second, and in support of this inference, was the information adduced upon cross-examination of Dr. Faver. ‘ ‘ This burden [of persuasion], however, could be as well satisfied by evidence adduced from [the adversary’s] witnesses as from those produced by [proponent] ” (Hinds v. Hancock Mut. Life Ins. Co., 155 Me. 349, 368). It seems irrelevant whether in a hypothetical case 10 psychiatrists testifying for defendant, as opposed to no expert evidence for the prosecution, would make a difference. It would depend on the quality of such evidence. If, as here, such evidence is so shallow as to cut in the prosecutor’s favor — or at the very least to create a bona fide jury question — then the court has no business interfering with that purely factual determination, especially in view of the fact defendant took no exception to that part of the charge covering the insanity defense.
*488 In reaching this conclusion we are not condoning the prosecutor’s failure to produce°further evidence óf defendant’s sanity. Here, however, the defendant’s evidence of insanity was so weak as to leave the prosecutor’s case intact. The majority’s view is tantamount to a holding that the jury must believe expert testimony. The jury in this case obviously rejected this testimony as they had every right to do considering the lack of underlying support.
The conviction should be affirmed.
Chief Judge Breitel and Judges Jones and Rabin concur with Judge Wachtleb ; Judge Gabbielli dissents and votes, to affirm in a separate opinion in which Judges Jasen and Stevens concur.
Order reversed, etc.

 It is true that in O’Dea the court cited the presumption of sanity, as an example of a purely procedural kind of presumption (118 Conn., at p. 64). It is also true that in Richardson it is noted that this “ presumption ” ought to be conceived of merely as a procedural device and nothing more (Richardson, Evidence [10th ed.], § 63). Dean Prince, however, notes that the New York cases are otherwise at least insofar as it is said in several of them that the “ presumption ” stays in in the face of countervailing evidence and can be considered by the jury. He would approve the idea that the jury can be advised “ that they should consider the evidence in the light of common experience that most men are sane ” (ibid.). This is no different than saying that although the *486 presump i>n as a procedural device for locating the ^en of presenting u Adence ma • r. n away, the “ common experience ” inference stays in for the jury ¿5 considerate i.