DETERMINED IN

# THE SUPREME COURT

OF

## WYOMING TERRITORY.

## JULY TERM, 1871.

---

## THE UNION PACIFIC RAILROAD COMPANY *v.* HAUSE.

DAMAGES, RAILROAD COMPANIES.—A railroad company is not responsible in damages to a person injured by an accident to a train passing over a portion of the road not completed, when said train is solely under the charge of the contractors building the road, and receiving all the profits thereof, that portion of the road still being unaccepted by the company. If any one is liable for damages it is the contractors, and not the railroad company.

IDEM.—Where suits are brought for injuries arising from accidents on railroads, exemplary, punitive or vindictive damages should not be awarded except in extreme cases. The general rule is, that sufficient damages should be given to fully compensate the plaintiff for his loss of time and suffering.

ERROR to the First District Court for Laramie County.

The following statement of the case fully presents the exceptions and points argued by counsel, and was filed by the judge who delivered the opinion of the court.

This was an action brought in the first judicial district of the territory of Wyoming, in the court holden in and

for the county of Laramie, at the March term, A.D. 1870, Hon. Wm. T. Jones, associate justice and judge of the third judicial district of said territory, presiding and holding court in and for the first district. On the ninth day of May, A. D. 1868, the plaintiff in error and defendant in the court below, an incorporated company, by an act of congress under the name, style and title of The Union Pacific Railroad Company, and as such was operating a part of their road which was then completed from Omaha on the Missouri river in the state of Nebraska to the city of Cheyenne, in the territory of Wyoming, a distance of about five hundred miles; that the said company had under contract and nearly finished a portion of their said road west of the city of Cheyenne to and beyond the city of Laramie, in the county of Albany in said territory of Wyoming. That on the said ninth day of May, A. D. 1868, there were cars running on the said road from Cheyenne for the purpose of conveying freight to and beyond Laramie, with a box-car commonly called a "caboose" attached, in which, as well as upon said freight cars, passengers were carried for hire or pay. That Silas Hause, the defendant in error and plaintiff in the court below, did on the ninth day of May, 1868, take passage on the said train at Cheyenne in said territory, and upon the said Union Pacific Railroad, for the purpose of going to Laramie city. That Silas Hause had a ticket in the usual form of railroad tickets, which was handed to him by a friend, which said ticket was taken up by the conductor of the train after leaving Cheyenne. That some distance east of what is now known, and was then known, as Sherman station, some of the cross-ties of the said railroad became broken, the rails of said road parted, or as it was termed by the witnesses "spread," and several of the cars, including the one on which Silas Hause, the plaintiff below, was riding, ran off the track and down an embankment, some on the right and others on the left side of the road. That Silas Hause, the said plaintiff below, was riding on the top of a box or house-car—that when the acci-

dent was occurring the said Silas Hause jumped off, and a barrel of molasses burst through the side of the car and struck the said Silas Hause on the leg, causing a serious compound fracture. That the said Silas Hause was taken charge of by certain surgeons, who dressed his wound, reduced the fracture, and subsequently brought him to Cheyenne, placed him in a hospital and took care of him for a considerable time, and until he was discharged as a convalescent.

The allegations set out in the petition of the plaintiff in the court below, Silas Hause, are that the defendant in the court below is and was on the ninth day of May, 1868, a corporation under the name, style and title of the Union Pacific Railroad Company, deriving and enjoying its corporate privileges by virtue of an act of congress. That on the ninth day of May, A. D. 1868, the said company was running a train of cars of a mixed character on their said road from Cheyenne to Laramie; that the said train carried freight for different persons, and also carried passengers, for which both freight and passengers they demanded and received pay or hire; that, although they may not have made any formal proclamation to that effect, yet they were known and recognized as common carriers; that in consequence of the imperfections of their road the train of cars on which Silas Hause was being conveyed was thrown off the track, and that the said Silas Hause received such injuries as to make him a cripple, laying the damages at ten thousand dollars.

This the defendant in the court below answers, admitting the first allegation, viz: that the said defendant was and is an incorporated company, but denying all the other allegations, and sets out specifically that the said railroad west of Cheyenne was, on the ninth day of May, A. D. 1868, in the hands of the contractor for building said road; and that if the said plaintiff in the court below was injured and entitled to damages, that he must look to the contractor and not to the said railroad company for them.

The case coming on for trial, after the plaintiff had sub-

mitted his evidence, a motion was made by defendant's counsel for a nonsuit, which motion was overruled, and a verdict after trial was found for plaintiff for the sum of ten thousand dollars ($10,000). A motion was then made for a new trial, and the exceptions taken both to the rulings of the court and to the verdict of the jury assigned as reasons for the new trial, and the motion was refused.

The case being certified to this court, the plaintiff in error assigns as exceptions, among other things: that the court erred in refusing defendant's motion for a nonsuit; that the verdict is not supported by the evidence, and cites various authorities, among which are: 1. To the error of the court in overruling defendant's motion for a nonsuit: *Stuart* v. *Simpson,* 1 Wend. 376; *Hartfield* v. *Roner,* 21 Wend. 615; *Morrison* v. *N. Y. & N. H. R. R. Co.,* 32 Barb. 568; *Sheldon* v. *Hudson River R. R. Co.,* 29 Id. 226; *Haring* v. *N. Y. & Erie R. R. Co.,* 13 Id. 9; *Carpenter* v. *Smith,* 10 Id. 663; *Spooner* v. *Brooklyn R. R. Co.,* 31 Id. 419.

The defendant in the court below also takes the ground, that the right to a writ of error is not waived by offering evidence in defense and proceeding with the trial after the motion for a nonsuit is refused, and cites: *Carpenter* v. *Smith,* 10 Barb. 663; *Reed* v. *Davis,* 3 Hill, 287; *Davis* v. *Hardy,* 6 Barn. & Cress. 225; 13 Eng. Com. Law R. 112; *Eddy* v. *Wilson,* Iowa, 259; *Fat* v. *Collins,* 21 Wend. 109; Burr. Prac. 239, 240; Wyoming Code, sec. 304; Idaho Code, sec. 311.

On the question of excessive damages the counsel for plaintiff in error cites among other authorities: Wyoming Code, sec. 311; *Jordan* v. *Reed,* 1 Iowa, 135; *Midland Pacific R. R. Co.* v. *McCartney,* 1 Neb. 398; Nebraska Code, sec. 314.

On the question of the verdict being unsupported by the evidence, is cited several authorities, which we do not deem it important to insert here. It is alleged that there was not sufficient evidence to show that the defendant in the court below was a common carrier, or that it was, as is claimed, a common carrier at the time the accident occurred on the

railroad west of Cheyenne; in fact, it is denied that it either was or had ever held itself out as such, nor had it sold a ticket to plaintiff or any other person; nor in any manner, either for hire or pay or for any consideration whatever, undertaken to carry either freight or passengers. It is in evidence that the contractors had been running cars over the partially-finished road west of the city of Cheyenne, and continued so to do until either the eleventh day of May, A. D. 1868, or the eighteenth of the same month, the witnesses not being certain on which of the two days; but no witness is called who proves that the plaintiff in error had undertaken to run cars west of Cheyenne on the ninth of May, 1868. The plaintiff in the court below does not, nor do any of the witnesses, state that he bought a ticket from the defendant below. It is in evidence, however, that the train which ran west of Cheyenne, and which, it is alleged, was run in the interests of the contractors, did not start from the depot of the plaintiff in error, but from a place several hundred yards west of where the trains were arriving and departing to and from Cheyenne and Omaha. It is also shown by an employee of the plaintiff in error, who kept its books, that no part of the earnings of the train which was run west of Cheyenne, prior to May 11, 1868, was received by the plaintiff in error, and there is no attempt to contradict either this or any kindred statement on the part of defendant in error. It is alleged by the plaintiff below that after he was injured that he was taken in charge by the surgeons of the defendant below, and taken to its hospital. This, while not deemed a very important statement, is, however, denied by the testimony of the surgeons, who say that the hospital did not belong to defendant below, but was a private enterprise of their own. It is alleged that the damages awarded by the jury, admitting that the facts as detailed justified them in finding any damages at all, were greatly in excess of what they should be, from the fact that damages should be in the nature of compensation for loss of time, interference with

business and a reasonable allowance for bodily suffering, and cites: Civ. Code Wyoming, sec. 311; *Collins* v. *A. & G. R. R. Co.*, 12 Barb. 492; *Clapp* v. *A. R. R. R. Co.*, 19 Id. 461.

They therefore claim, as before stated: 1. Error in the court below in refusing to grant a nonsuit; 2. That there was not sufficient evidence to justify the jury in awarding any damages, but the verdict should have been for the defendant below; 3. That if the jury were justified in finding for plaintiff below, that then the damages found are greatly in excess of what the jury was justified in finding. There are several other exceptions urged by plaintiff in error which we have not referred to, one of which we will merely mention incidentally, and that is, that the court erred in refusing a new trial. The counsel for defendant in error reply to the foregoing, and claim that the fact that the plaintiff in error was the owner of the Union Pacific Railroad, and that cars were running on the ninth of May, 1868, is *prima facie* evidence of ownership in the road and cars, and that the burden of proof is thrown on plaintiff in error to rebut the presumption of careless management and liability for injuries sustained, and cite, among other authorities: 2 Red. on Railroads, 202, 1 Id. 532; 1 Hill. on Torts, 120, 125 and note; Reed on Carriers, 383; and that railroads are presumed to be common carriers, cites: 2 Hill. on Torts, 356.

As to the refusal of the court to sustain the motion for nonsuit, the counsel for defendant in error cites: 3 Barb. 419; 4 Seld. 497; and also authorities above cited. As to the question of excessive damages, cites: Sedg. on Damages, 712; Red. on Carriers, 315 *et seq.*

It is alleged, also, that the defendant in error is entitled to damages, not to be measured by the loss of time merely, but is entitled to recover such an amount as will reimburse him, not only for his loss in time, but for physical sufferings during the time of his confinement in the hospital, and on account of the permanent injury likely to ensue.

*W. R. Steele,* for plaintiff in error..

*W. W. Corlett,* for defendant in error.

By the Court, FISHER, J.   We are not prepared to say that the learned judge in the court below erred in refusing to grant the nonsuit prayed for by the counsel for the defendant in that court, as there was a *prima facie* case made out, both by the allegations contained in plaintiff's petition and the evidence submitted, to justify the court in proceeding to a fuller investigation than had been arrived at at the stage in evidence which had then been reached.   At least one of the allegations in the petition had been admitted, and another one had been sufficiently sustained by the evidence to justify the court in eliciting further light.   We think that the question of granting the nonsuit was entirely in the discretion of the court, and in this we are abundantly sustained in *Pratt* v. *Hull,* 13 Johns. 334; *Labar* v. *Roplin,* 4 N. Y. 549.

Had the motion for the nonsuit been submitted after all the evidence had been given both for plaintiff and defendant, we are inclined to think it might have met with a different response from the court.   And this leads us to say that under the evidence given, and the case had gone to the jury under the instructions of the court, they should have found for the defendant, inasmuch as it is not shown that the defendant was a common carrier on that portion of the road upon which the accident occurred; but that on the contrary the cars were run by the contractors for the construction of that part of the road, managed by them and for their interest and profit; the defendant receiving no part of the revenues arising from the carrying either of freight or passengers.   Hence we have no difficulty in arriving at the conclusion set out in the exception by the plaintiff in error that the verdict was not supported by sufficient evidence; but that it is not supported by any evidence at all. While we would hesitate in interfering with the verdict of

juries, knowing that they are regarded as one of the "bulwarks of our Gothic liberties," yet when they become so clearly wrong as in the case under consideration, they lose their title of "defenders of the rights of the citizen," and become engines of oppression. The consideration of the fact of the total want of evidence submitted in this case, would in itself be amply sufficient to justify our conclusions, and lead us to wonder why the court below should have had any hesitation in granting a new trial.

But there is another exception urged which in itself ought to remand this case to the court whence it came for a reconsideration, and that is the question of the amount of damages awarded the plaintiff below by the jury. That the award is not only excessive but unreasonable, and were it not that we do not feel disposed to deal in terms of harshness, we might say that the jury either did not comprehend the obligation implied by their oaths, or else some demon of malevolence perverted their judgment so as to lead them into a vindictive spirit of persecution. Damages for injuries should be assessed in the nature of compensation. Juries should not presume that defendants have done intentional wrongs; that they willfully and maliciously inflicted injury upon any one unless the facts as developed on the trial irresistibly lead to such a conclusion. It is generally supposable that railroad accidents entail heavy losses upon the companies, and that they are not caused with any malevolent spirit of doing injury to the person or property of their patrons, and while they are legally responsible for injuries resulting from accident, they should not be punished in a vindictive spirit, unless it becomes necessary to do so to mete out to them measure for measure.

In the case before us, taking the allegations of the plaintiff below as the standard by which they were governed, allowing those allegations to be sustained, surely no defendant could have shown a truer spirit of benevolence than was exhibited by this plaintiff in error. Surgeons of acknowledged skill were promptly sent to the scene of acci-

dent, a hospital with all its benevolent appliances was thrown open for the plaintiff's admission and care, and everything which the promptings of humanity could suggest were supplied in alleviating his sufferings.

This, while it was no more than the precepts of Christianity prompt, is but another instance of the rule which generally prevails in similar emergencies; hence, the measure of damages should be regulated in the form of compensation, and not with a motive to punish the unintentional wrong-doer. Punitive or exemplary damages may be awarded in cases where personal injuries have been committed through wantonness or even gross carelessness of one party upon another, but there should be clear and unmistakable evidence of an intention to do the personal injury complained of, before the jury would be justified in finding an amount greatly beyond the actual loss sustained by the person injured.

In the case before us, we are very clear in the opinion that the amount of damages awarded by the jury is far in excess of the amount sustained, in a pecuniary view of the case; and this in itself, leaving out of the question the other points raised in the argument, would be enough to justify us in remanding the case for reconsideration.

We are, therefore, compelled to remand this case, and order a venire *de novo*, under the rules indicated in this opinion, and the decision of the court below is accordingly reversed.