## HILDEBRAND v. C. B. & Q. R. R. COMPANY
(No. 1744; September 13, 1932; 13 Pac. (2d) 1081)

For the appellant there was a brief by *R. H. Nichols* and *S. J. Lewis,* both of Casper, Wyoming, and *Joseph Garst,* of Douglas, Wyoming, and oral argument by *Mr. Garst* and *Mr. Nichols.*

For the respondent there was a brief by *Dawson & Daniels,* of Douglas, Wyoming, and oral argument by *John D. Dawson.*

BLUME, Justice.

This is an action brought by the plaintiff Hildebrand against the defendant railroad company to recover damages on account of cattle killed on the right of way of the defendant. The case was tried to a jury who brought in a verdict for the plaintiff. Judgment was entered thereon; and the defendant has appealed. The contention is that the verdict and judgment are contrary to law and the evidence.

The petition alleges that the defendant duly fenced its right of way, but that it failed in its duty to keep it in proper repair, and that by reason thereof, plaintiff's cattle strayed upon defendant's right of way and were killed by a train. The statutes applicable herein are Sections 96-116 and 96-117, R. S. Wyo. 1931, which provide as follows:

Sec. 96-116: "All railway corporations, owning or operating a line of railway within the state, shall construct, maintain and keep in repair on each side of the track thereof, a sufficient fence, so connected with suitable cattle guards at all public road crossings as to prevent stock from getting on the railroad track of said corporation, and such fence, when of barb wire, to consist of four wires securely fastened to posts set not more than thirty-two feet apart, with stays not more than ten feet apart." * * *

Sec. 96-117: "Any corporation operating a railway and failing to fence the same and to construct and maintain suitable cattle guards as required by the preceding section, shall be liable to the owner or owners of any live stock killed or injured by reason of its failure to construct or keep in repair such fence or cattle guard in the manner provided in the preceding section, for the full amount of the

damage sustained by the owner on account thereof and to make a *prima facie* case for recovery, it shall only be necessary for such owner to prove the loss or injury to his property; provided, that no corporation operating a railroad shall be liable for any damage occasioned by the wilful act of the owner or of his agent or employees or for stock killed or injured on public road crossings unless negligence on the part of such corporation, its agents, servants or employees can be shown.''

It is admitted that the cattle of plaintiff here in question were killed by one of defendant's trains on its right of way.

1. The petition of plaintiff contains three causes of action. The third, which we shall consider first, is for killing two cows on December 13, 1930. It is admitted that the cows strayed on to the railroad right of way at a place where the fence was down. Defendant sought to show that this was caused by a plank which the plaintiff placed, or caused to lean, on the fence. This, however, was denied by the plaintiff, and the conflict in the evidence was by the jury resolved in plaintiff's favor, and we are unable to say that they were not warranted in doing so. It was further disclosed by the testimony that the plaintiff knew of the condition of the fence for some days prior to the time that the cattle in question were killed, and it is accordingly contended that he should have notified the defendant, and that his failure to do so makes him guilty of contributory negligence which bars his recovery herein. The testimony of defendant's section foreman, however, discloses that it was his constant duty to look after the fence. Hence he doubtless knew of its condition and notice by plaintiff could not have added to the knowledge which he already, presumably, had. Under these facts we cannot hold that the plaintiff's right of recovery is barred by contributory negligence. The judgment as to the third cause of action must, accordingly, be affirmed.

2. The first cause of action was for killing two cows in August, 1929. The defendant's section foreman testified that he found these cattle, when killed, near a gate; that he traced the tracks of the cattle, and that they showed that the cattle entered the defendant's right of way through this gate; that this gate was in good condition; that he closed it the night before the cattle were killed, and that he found it open the next morning. It is defendant's contention that this testimony discloses that defendant was in the exercise of due care, and hence must be absolved from all responsibility for killing the cattle. Without considering other points in this connection, however, the testimony further discloses that the gate in question was about two miles distant from defendant's land, on which the cattle had been grazing, and plaintiff testified that his land, at the time in question, was fenced on all sides, sufficient to keep the cattle within its bounds, except the fence along the defendant's right of way, bordering on his land, which was down, and covered with dirt, and that the cattle entered defendant's right of way at this place. This testimony was in direct contradiction of the testimony of the section foreman that the cattle entered the right of way at the gate. The conflict was resolved in plaintiff's favor, and we are unable to see how we can interfere with that finding.

3. The second cause of action, which was for killing a cow and a yearling in August, 1930, presents more difficult questions. It appears that the defendant's railroad runs nearly through the center of plaintiff's land, near Careyhurst, Wyoming, for a distance of about eight miles. The cattle in question entered the railroad right of way at a gate—not the gate heretofore mentioned, but one a number of miles distant therefrom. It is located about a mile "west of Fletcher," but the exact location thereof is not ascertainable from the record before us. There were no cattle guards at this crossing. Plaintiff testified: "Q. Was it (the crossing) where the railway intersects your lands?

A. No, it wasn't, it cornered mine where they got in at. Q. What was this last gate you were testifying about, was that a crossing? A. Yes. Q. Whose gate is it? A. Railroad's I guess. Q. Is it your gate? A. No. Q. This is a gate that swings, when you go through it you have to open it, not an auto gate? A. No. Q. Regular old fashioned gate? A. No. Q. Private crossing? A. No, it is not. Q. Well, what crossing is it? A. There is a road across it that goes up Sand Creek to the Sinclair, it is a private crossing with gate used by tank farm employees out there. Q. There are other people that go through it? A. Yes. Q. What kind of gate was that? A. Pipe gate with wires. Q. Heavy gate? A. No. Q. You would not expect a cattle guard in a gate like that? A. No, not in gate. Q. Do you know who joins this gate? A. No. Q. Do you ever use it? A. I go through it once in a while. Q. Were you using it at that time? A. Yes." The testimony on behalf of the plaintiff further tends to show that the gate in August, 1930, was in a bad condition; that it was broken down in the center and dragged. It is not stated, however, whether or not cattle could go through it when shut. Defendant's section foreman testified that it was in good condition, except that an automobile ran into it one day, broke it in the center, and that it was repaired the next day; that the gate was frequently left open; that he frequently shut it; that he closed it at about five o'clock on the evening before the cattle in question were killed; that he found it open the next morning, the cattle entering the right of way some time during the night.

It is the defendant's contention, in substance, that it does not appear that the defect in the fence was such as to permit cattle to go through it; that, on the contrary, it appears that they entered the right of way when the gate was open; that it is not absolutely liable for leaving a gate at a private crossing open, but is merely liable for the want of exercise of ordinary care, and that no such want of care,

but the contrary, appears herein. We need not determine whether the conclusions drawn from the facts are justified —whether the cattle entered the right of way through the broken gate, or whether they entered while the gate was open. And, it may be that the rule of law contended for herein should be applied, if it appeared that the private crossing was one constructed and maintained for the benefit of the plaintiff. 52 C. J. 58. The burden of proving want of negligence was on the defendant, in view of the admission that the cattle were killed by one of the defendant's trains. Section 96-117, Rev. St. 1931; Wyoming & N. W. Ry. Co. v. Snavely, 23 Wyo. 324, 150 Pac. 760. And it is not shown that the private crossing was constructed for the benefit of plaintiff. On the contrary, it would seem, that it was not one that was so constructed. Sec. 38-236, Rev. St. 1931, provides:

"When any person owns land on both sides of any railroad, the corporation owning such railroad shall, when required so to do, make and keep in good repair one causeway or other safe and adequate means of crossing same."

That is the only section, so far as we know, which requires or permits a railroad to construct a private crossing, and the conditions of that section are not shown to have existed in the case at bar. In 52 C. J. 58, it is said:

"If a railroad constructs gates at points where they are not required or permitted, the burden is on the company to see that they are kept closed."

In 52 C. J. 59, it is said:

"A railroad company has a right to permit the use of gates or bars at places other than farm crossings or to construct them itself, if it shall deem it advisable to do so; but they must be constructed and maintained as to serve the purposes of a fence, and the company must see that they are kept closed."

In the case of Winters v. Hines, 207 Mo. App. 412, 229 S. W. 281, 282, the court said:

"We do not think appellant's action in putting in and maintaining the gate at this road crossing was either justified or excusable. The law does not provide for or permit gates to be put in anywhere except at farm crossings or such places as may be convenient for the use of adjoining proprietors. The railroad company is not authorized to put in gates for the use of the general public at any kind of road crossing. At such places it must, if it recognizes the right of the public to use the crossing, leave it open for their free use and must put in cattle guards to keep stock off its right of way beyond the crossing. Having failed to do that in this instance, but having chosen rather, to put in gates for the use of the public, it thereby assumed responsibility for the use of the gates by the public, and their acts in leaving the gates open are chargeable to it."

In the case of Texas & P. Ry. Co. v. Webb, 105 Tex. 210, 114 S. W. 1171, 1174, the court said:

"The evidence shows that there was an opening in the fence through which the horse passed, and does not show that it was one which the company was required by law to make. The liability must be held to be the same as if the track had not been fenced at all at that place. Tex. Cen. Ry. Co. v. Pruitt, 101 Tex. 548, 109 S. W. 925. The provision giving immunity because of fencing is only satisfied by a fence sufficient to turn stock; and gates put in where they are not required or permitted to be, when left open afford easy access to the track. Of course, we do not mean to say that a fence might not be sufficient with a closed gate in it, but to make it sufficient the gate must be kept closed, and where it is unnecessarily put in the railroad company voluntarily takes the risk."

In Galveston etc. Ry. Co. v. Wessendorff, (Tex. Civ. App.) 39 S. W. 132, 133, it was said:

"The evidence indicates that the horse was out on the commons and entered an open gate that led to the right of way of appellant. Because the gate was erected for the

benefit of a landowner on the other side of the track presents no defense to the negligence of appellant in leaving the gate open. There was no attempt to show that the gates were at a spot where the law required openings, the only effort being to show that gates were built as a convenience to a man who had land adjoining the track. The evidence would not have constituted a defense to the action, and was properly rejected."

It is not shown, in the case at bar, that the private crossing in question was one authorized or permitted by law. The rule of the foregoing cases, accordingly, applies.

It follows that the judgment herein should be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.