**David DANCULOVICH and Donna Danculovich, Administrators of the Estate of Carl Danculovich, Deceased, Appellants (Plaintiffs below),**

v.

**Randy BROWN, Appellee (Defendant below).**

**No. 4974.**

Supreme Court of Wyoming.

April 11, 1979.

Raymond B. Hunkins, of Jones, Jones, Vines & Hunkins, Wheatland, for appellants.

A. Joseph Williams, of Guy, Williams & White, Cheyenne, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Plaintiffs-appellants brought this action under the wrongful death act, § 1–38–102, W.S.1977,[1] as administrators of the estate of Carl Danculovich, deceased, against defendant-appellee, who was driving the motor vehicle involved in a one-automobile accident near Wheatland in which deceased, a passenger, was killed. The action accrued prior to the determination that the Wyoming guest statute, § 31–5–1116, W.S.1977,[2]

---

1. Section 1–38–102, W.S.1977, provides:

"(a) Every such action shall be brought by and in the name of the personal representative of the deceased person.

"(b) If the deceased left a husband, wife, child, father or mother, no debt of the deceased may be satisfied out of the proceeds of any judgment obtained in any action brought under the provisions of this section.

"(c) The court or jury, as the case may be, in every such action may award such damages, pecuniary and exemplary, as shall be deemed fair and just. Every person for whose benefit such action is brought may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.

"(d) Every such action shall be commenced within two (2) years after the death of the deceased person."

2. Section 31–5–1116, W.S.1977, provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or willful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or willful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

was invalid, wherefore plaintiffs could recover only if defendant was found to be grossly negligent. *Nehring v. Russell,* Wyo., 582 P.2d 67 (1978). The jury found gross negligence on the part of defendant and apportioned the negligence 53 percent to defendant and 47 percent to plaintiffs.

The issues here presented concern the propriety of the following actions by the trial court:

1. Removal of the question of "willful and wanton" misconduct from consideration of the jury.
2. Removal of the question of exemplary damages from consideration of the jury.
3. Refusal to include a "last clear chance" instruction in the jury instructions.
4. Refusal to allow the introduction of evidence concerning "lost investment" in deceased on the part of his parents.

Since the questions of willful and wanton misconduct and exemplary damages were properly questions for jury determination, we will reverse.

The accident happened on January 8, 1977, on a public highway almost a mile north of the Wheatland city limits. For a while preceding the accident, defendant and deceased rode around the streets of Wheatland, during which time they purchased and drank some beer. Later, they picked up deceased's fiancee. The three of them were in an automobile owned by a friend of defendant and driven by defendant. They drove through Wheatland and were proceeding north when the vehicle left the road on a five-degree turn. Deceased was killed. Defendant and deceased's fiancee were injured, and neither of them can re-

member any of the facts of the accident. The vehicle left the road at a speed of 75 miles per hour, or more, a speed in excess of the legal limit.[3] About four-tenths of a mile before the place of accident, the vehicle crossed a double yellow line denoting a no-passing zone and passed another vehicle. Defendant had a blood alcohol content of .12 at the time of the accident. Deceased's blood alcohol content was not indicated in the record.[4]

## WILLFUL AND WANTON MISCONDUCT AND EXEMPLARY DAMAGES

At the close of all of the evidence in this case, the court granted defendant's motion for a directed verdict relative to the issue of willful and wanton misconduct, or in the alternative, to dismiss that portion of plaintiffs' complaint relative to that issue. To determine the propriety of this action, this court must assume that the evidence in favor of plaintiffs is true, and give to it every favorable inference reasonably and fairly drawn from it. *Brennan v. Laramie Newspapers, Inc.,* Wyo., 493 P.2d 1044 (1972); and *Hester v. Coliseum Motor Co.,* 41 Wyo. 345, 285 P. 781 (1930). And the question of whether or not there was sufficient evidence to create a factual issue for the jury is solely one of law to be determined, on appeal, by this court without deference to the view of the trial court. *Barnes v. Fernandez,* Wyo., 526 P.2d 983 (1974). Doing so in this case reflects that as a matter of law there is sufficient evidence upon which a factfinder could determine that there was willful and wanton misconduct on the part of defendant if such determination were made.

---

**3.** Radar clock of vehicle at 56 m.p.h. was made at north edge of business district. A witness estimated speed at 75 m.p.h. at city limits. Another witness estimated speed at 85 m.p.h. when vehicle passed him at point about .4 of mile before place of accident. Accident reconstruction expert estimated speed at place of accident to be minimum of 75 m.p.h. The speed limit within the city limits was 30 m.p.h. and beyond the city limits, 55 m.p.h.

**4.** The parties stipulated at a pretrial conference that results of the blood alcohol tests could be introduced without foundation. On cross-examination by defendant, witness Rugotske testified that it would require more than six 12-ounce beers to make a .14 blood alcohol content in deceased, but the existence of such content in deceased is not of evidence in the record as having been presented to the jury.

■ Willful and wanton misconduct is that which tends to take on the aspect of highly unreasonable conduct, or an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. It is not with the intent to cause injury or damage, but it must be more than mere mistake resulting from inexperience, excitement or confusion, and more than mere thoughtlessness or inadventure, or simple inattention. An intentional omission to perform a statutory duty is not willful or wanton misconduct, unless a reasonable man in the actor's place would have been aware of great danger, and proceeded in face of it so entirely unreasonably as to evidence a knowledge, express or implied, that injury will be a probable result. *Mitchell v. Walters,* 55 Wyo. 317, 100 P.2d 102 (1940); Prosser, Torts 4th Ed., p. 185 (1971); *Sanders v. Pitner,* Wyo., 508 P.2d 602 (1973).

Defendant exceeded the speed limit; he violated a no-passing zone requirement; he had a blood alcohol content sufficient to raise a presumption of intoxication; and he failed to negotiate a five-degree curve. Each of these are violations of statutorily imposed duties. It may be said as a matter of law that any one of them could not support a finding of willfulness or wantonness. Taken in toto, they would support such finding. The jury has found them sufficient to support a finding of gross negligence. As will be indicated later, wanton and willful misconduct is more aggravated than gross negligence, and it is conceivable that the jury, or any other factfinder, might find these facts insufficient to establish willful and wanton misconduct. But, that is the point. It is also conceivable that the jury could find them sufficient.

If the jury had found these facts sufficient for willful and wanton misconduct—as it did for gross negligence—it could not be said as a matter of law that the verdict was not supported by the evidence.

■ Exemplary damages have for their purpose the punishment of a defendant in a civil action for wrongful and aggravated conduct and to serve as a warning to others to deter. They are not recoverable to compensate the plaintiff. They are usually proper only in cases where wanton and willful misconduct is alleged. Since the question of willful and wanton misconduct was properly a jury question, damages arising therefrom are also a jury determination and could be awarded if not excessive. *Petsch v. Florom,* Wyo., 538 P.2d 1011 (1975); and *Wilson v. Hall,* 34 Wyo. 465, 244 P. 1002 (1926). See *Combined Ins. Co. of America v. Sinclair,* Wyo., 584 P.2d 1034 (1978), and *Jackson v. Shaw,* Wyo., 569 P.2d 1246 (1977).

■ Plaintiffs contend that language in some Wyoming cases decided in 1871, 1902, 1913 and 1926 authorizes exemplary damages for "gross negligence." We do not believe that the holdings in those cases— *Union Pacific R.R. Co. v. Hause,* 1 Wyo. 27 (1871) (intentional trespass case); *Cosgriff v. Miller,* 10 Wyo. 190, 68 P. 206 (1902) (intentional trespass case); *McIntosh v. Wales,* 21 Wyo. 397, 134 P. 274 (1913) (malicious prosecution case); *Wilson v. Hall, supra,* (assault and battery case)—are as broad as indicated by plaintiffs, but, in any event, the proper rule is that enunciated in *Petsch v. Florom, supra; Wilson v. Hall, supra; Town of Jackson v. Shaw, supra;* and *Combined Ins. Co. v. America v. Sinclair, supra.*

Plaintiffs further contend that the reference to exemplary damages in the wrongful death act (fn. 1, supra) authorizes a consideration of such damages by the jury in any case brought under that act. Such reference was only an enumeration of possible damages and not an enlargement of the basis for damages. The statutory language, "may award such damages, pecuniary and exemplary, *as shall be deemed fair and just,*" reflects the legislative intention to authorize damages in accordance with the existing statutes and legal decisions which have established standards and procedures to determine the fairness of the award of damages in kind and amount. *Civic Ass'n of Wyoming v. Railway Motor Fuels,* 57 Wyo. 213, 116 P.2d 236 (1941); and *DeHerrera v. Herrera,* Wyo., 565 P.2d 479 (1977). To statutorily direct an award

of exemplary (punitive) damages in other than a criminal case and without regard to the degree of culpability would be unreasonable and oppressive and could well be an unconstitutional direction. *Texas Co. v. Siefried,* 60 Wyo. 142, 147 P.2d 837, reh. den. 60 Wyo. 174, 150 P.2d 99 (1944); *McVicker v. Kuronen,* 71 Wyo. 222, 256 P.2d 111 (1953); *In Re Romer,* Wyo., 436 P.2d 956 (1968). We are not here called upon to consider a constitutional question, and the proposition is mentioned only to emphasize the probable legislative intent. Exemplary damages can be awarded here only if the jury finds willful and wanton misconduct on the part of defendant.

Inasmuch as the trial court may have removed the question of "willful and wanton" misconduct and exemplary damages from jury consideration, not only because he found as a matter of law that there was insufficient evidence to submit the same, but also because he believed that the jury should and would consider it in the context of determining relative degrees of comparative negligence and not as a separate item, there is yet to be considered the effect of the Wyoming comparative negligence statute, § 1–1–109, W.S.1977,[5] on the issues of "willful and wanton" misconduct and exemplary damages.

The Wyoming statute is a "not as great as" form of comparative negligence statute (similar to an "equal to or greater than" form) as distinguished from the "pure" form, under which the plaintiff may recover part of his damages if defendant's negligence is established regardless of the percentage of his own contributory negligence—such percentage being used only to determine the amount by which plaintiff's damages are reduced. The Wyoming act does not prevent contributory negligence from being a complete bar to plaintiff's recovery if his contributory negligence is "as great as" defendant's negligence.

Accordingly, the comparative negligence statute has not changed Wyoming substantive negligence law (1) if there is no contributory negligence, or (2) if the contributory negligence exceeds 49 percent. If the contributory negligence is found to be 49 percent or less, substantive negligence law is changed in that contributory negligence is no longer a complete bar to plaintiff's action, but only diminishes the damages proportionate to the degree of negligence.

■ Procedurally, a new and important element results from the statute. When contributory negligence is a factor, the jury must determine the percentage of negligence attributed to each party, rather than the broad categorizations of "ordinary negligence" and "gross negligence" as before. *Mitchell v. Walters, supra.* This can result in exact computations such as those in *Quady v. Sickl,* 260 Wis. 348, 51 N.W.2d 3 (1952), in which the jury found plaintiff Quady 15.42 percent negligent, defendant Sickl 47.08 percent negligent, defendant Belden 14.17 percent negligent, and defendant Pankratz 23.33 percent negligent. The category of "gross negligence" will no longer be pertinent except in a few isolated circumstances.[6] The obsolescence of the

---

5. Section 1–1–109, W.S.1977, provides:

"(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.

"(b) The court may, and when requested by any party shall:

"(i) If a jury trial, direct the jury to find separate special verdicts;

"(ii) If a trial before the court without jury, make special findings of fact, determining the amount of damages and the percentage of negligence attributable to each party. The court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering;

"(iii) Inform the jury of the consequences of its determination of the percentage of negligence."

6. "Gross negligence" appears in Wyoming statutes in ten places: § 15–1–707(j), W.S.1977, exempts boards of adjustment from assessment of costs on appeal to district court unless act was "with gross negligence or in bad faith or with malice"; § 19–5–113(a), W.S.1977, ex-

term "gross negligence" will be no great loss toward the attainment of equity. The term has been characterized as "an unhappy term of ill-defined content." Prosser, Torts 4th Ed., p. 10 (1971).

█ But the category of "willful and wanton" misconduct can not be likewise relegated to obsolescence by the advent of comparative negligence. While "ordinary" and "gross" negligence differ in degree, "ordinary" negligence and "willful and wanton" misconduct differ in kind.[7] In apportioning the degrees of negligence between the parties, a jury will no longer be concerned with the point at which ordinary negligence becomes gross. It will consider the relativity of negligence from 0 degree to 100 degrees. But, this apportionment does not concern the difference in the kind of conduct which distinguishes negligence from willful and wanton misconduct. Willful and wanton misconduct, in the strict sense, is not negligence, since it involves intent rather than inadvertence, and is positive rather than negative.[8]

" ' " * * * Willful negligence involves the element of conduct equivalent to a so-called constructive intent." ' "

" ' * * * Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure.' "

\* \* \* \* \* \*

empts state, political subdivisions, state agencies or civil defense and disaster workers from liability for death or injury "except in cases of willful misconduct, gross negligence or bad faith"; § 31–5–1116, the guest statute; § 33–26–143(b), W.S.1977, exempts unpaid rescue unit and ambulance personnel from liability for civil damages except for "acts or omissions constituting gross negligence or willful or wanton misconduct"; §§ 33–3–121(a)(ii), 33–4–115, 33–21–115(a)(iii), 33–26–129(b)(xiv)(C) and 33–30–212(a)(xi), W.S.1977, allowing boards for CPA, architects, nurses, medicine and surgery and veterinarians to refuse to issue and to revoke licenses to practice the respective professions for reasons including "gross negligence"; § 34–13–105(e), W.S.1977, exempts custodians under gift to minors act from liability for losses unless resulting from "bad faith, intentional wrongdoing or gross negligence."

" * * * 'Willful misconduct is the intentional doing of something which should not be done, or intentional failure to do something which should be done, in the operation of the automobile, under circumstances tending to disclose the operator's knowledge, express or implied, that an injury to the guest will be a probable result of such conduct. It differs from negligence, even gross negligence, although it may include gross negligence, and involves a distinct positive element as distinguished from the merely negative element of negligence or carelessness. It is willfully designed to accomplish a specific result, and is not aimless of purpose or regardless of results.' " *Mitchell v. Walters, supra,* 100 P.2d at 106–107.

See 65 C.J.S. Negligence § 9(1)(c).

█ The intent in willful and wanton misconduct is not an intent to cause the injury, but it is an intent to do an act, or an intent to not do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable man would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another. *Mitchell v. Walters, supra;* and 57 Am.Jur.2d, Negligence, § 101, p. 707.

Ordinary contributory negligence has not precluded recovery where defendant's conduct is wanton or willful. *Mitchell v. Walters, supra;* and *Sanders v. Pitner, supra.*[9]

7. Prosser, Torts 4th Ed., p. 185 (1971); Restatement of The Law (Second), Torts 2d, § 500, Comment g at 590, (A.L.I.1977); 65 C.J.S. Negligence § 9(1)(b) and (c).

8. It was once said that "[n]egligence and willfulness are as unmixable as oil and water. 'Willful negligence' is as self-contradictory as 'guilty innocence.' " *Kelly v. Malott* (7th Cir. 1905) 135 F. 74, 76.

9. Wyoming has specifically provided by statute that "[t]here is no right of contribution in favor of any tortfeasor who has intentionally, willfully or wantonly caused or contributed to the injury or wrongful death." Section 1–1–110(c), W.S.1977.

The conclusion, then, is that § 1–1–109 does not mandate reduction of damages on the basis of comparative negligence of the plaintiff if defendant's misconduct is willful and wanton.[10] To hold otherwise would be inconsistent with the purpose behind the doctrine of comparative negligence. The doctrine is designed to ameliorate the harshness of the contributory negligence bar. The court decisions which have not applied the contributory negligence bar to willful and wanton misconduct had the same purpose. Damages resulting from willful and wanton misconduct are not "damages for negligence" as that term is used in § 1–1–109.[11]

Defendant contends that plaintiffs did not properly protect the record by making sufficiently clear the grounds for their objection to the refusal of the trial court to instruct the jury relative to willful and wanton misconduct and exemplary damages. Rule 51, W.R.C.P., provides in part that:

"  *  *  * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.
*    *    *  "

The purpose of this rule is to insure that the trial judge is aware of the nature and grounds of the objection so that he can consider the propriety of the instruction and so that he may have an opportunity to correct any possible error. *Oeland v. Neuman Transit Company,* Wyo., 367 P.2d 967 (1962); *Edwards v. Harris,* Wyo., 397 P.2d 87 (1964); *Haley v. Dreesen,* Wyo., 532 P.2d 399 (1975).

The parties are in agreement that immediately prior to submitting the case to the jury the judge advised that he was remov-ing reference to willful and wanton misconduct and exemplary damages and corresponding forms of verdicts from the instructions which had been submitted the previous day to counsel as the instructions to be given. Plaintiffs' objection was "on the ground and for the reason that it [the instructions] does not include a form of verdict as how the jury is to consider willful and wanton misconduct and punitive damages."

The fact that the objection was directed to a change in contemplated instructions which were a result of discussion and cooperation of counsel; the fact that the judge had obviously considered the change overnight and at length; the fact that the action was not only a refusal to give an instruction but was to sustain defendant's motion to dismiss the action insofar as it had to do with willful and wanton misconduct and exemplary damages; and the fact that both willful and wanton misconduct and exemplary damages were referred to in that objection, direct the conclusion that the trial judge was well aware of the ramifications of his action and had ample opportunity to consider possible error and corrections necessary to avoid error.

Although the foregoing is determinative of this case, the other two issues presented on appeal will probably arise again on the retrial of this case. In such instance "it is our right, if it is not our duty, to decide the question." *Chicago & N.W. Ry. Co. v. City of Riverton,* 70 Wyo. 119, 127, 247 P.2d 660, 663 (1952); *Bartlett v. State,* Wyo., 569 P.2d 1235, 1241 (1977); *Goodman v. State,* Wyo., 573 P.2d 400, 413 (1977).

## LAST CLEAR CHANCE

Wyoming has recognized the doctrine of "last clear chance" as a defense to contribu-

---

10. The Supreme Court of Wisconsin ruled to the contrary in *Bielske v. Schulze,* 16 Wis.2d 1, 114 N.W.2d 105 (1962), but in doing so did away "with the basis for punitive damages in negligence cases," 114 N.W.2d at 113. We believe that the availability of an award of punitive damages in a proper case of willful and wanton misconduct is beneficial.

11. "Willful" and/or "wanton" appears in Wyoming Statutes in only three places: § 31–5–1116, the guest statute; § 33–26–143(b), good samaritan act (see fn. 6); and § 31–5–229, W.S.1977, defining the crime of reckless driving to be driving a vehicle in willful or wanton disregard for the safety of persons or property.

tory negligence. *Johnston v. Vukelic,* 67 Wyo. 1, 213 P.2d 925 (1950); *Borzea v. Anselmi,* 71 Wyo. 348, 258 P.2d 796 (1952). In the latter case, 258 P.2d at 802, the court set forth rationale for the doctrine:

" * * * ' "The party who last has a clear opportunity of avoiding an accident, notwithstanding the negligence of his opponent, is considered solely responsible for it. Such is a simple statement of the doctrine of 'the last clear chance.' The *last clear chance* doctrine is not an exception to the general doctrine of contributory negligence. It does not permit one to recover in spite of his contributory negligence, but merely operates to relieve the negligence of a plaintiff or deceased in a particular instance, which would otherwise be regarded as contributory, from its character as such. This result it accomplishes by characterizing the negligence of the defendant, if it intervenes between the negligence of plaintiff or deceased, and the accident, as the sole proximate cause of the injury, and the plaintiff's antecedent negligence merely as a condition or remote cause. The antecedent negligence of the plaintiff or deceased having been thus relegated to the position of a condition or remote cause of the accident it cannot be regarded as contributory, since it is well established that negligence, in order to be contributory, must be one of the proximate causes." ' "

 It could be said that since the Wyoming comparative negligence statute does not abolish the doctrine of contributory negligence in those instances in which the plaintiff's negligence is "as great as" defendant's negligence, or more, the doctrine of last clear chance is still viable to that extent regardless of the statute. Apparently many of the states with comparative negligence statutes so hold. Am. Jur.2d, New Topic Service, Comparative Negligence, § 31 (1977); 78 A.L.R.3d 339, 386. However, there is no practical basis to the rationale used to retain the doctrine of last clear chance in face of a comparative negligence statute. Such rationale is that the doctrine is premised on the fact that defendant's failure to avail himself of the last clear chance to avoid the accident made such failure the sole proximate cause of the injury and plaintiff's negligence was therefore only a remote cause. *Vlach v. Wyman,* 78 S.D. 504, 104 N.W.2d 817 (1960); see 59 A.L.R.2d 1261, Annotation. The fact of proximate cause is part of the fact of finding negligence. The essentials of negligence are duty on the part of defendant, failure to perform the duty, proximately causing damage to plaintiff. *Hines v. Sweeney,* 28 Wyo. 57, 201 P. 1018 (1921); *Hildebrand v. Chicago, B. & Q. R.R.,* 45 Wyo. 175, 17 P.2d 651 (1933) on rehearing of 44 Wyo. 488, 13 P.2d 1081 (1932). Under the comparative negligence statute the jury must determine the existence of negligence on the part of the parties and the relative percentage thereof. To determine the existence of negligence, it must consider the duty on the part of each party, the failure to perform on the part of each party, and the proximate cause of the damages attributable to each party. If the jury determines that the defendant's actions did not proximately or directly cause the injury, it will find no negligence on the part of defendant and there would be no need to consider the "last clear chance" rule. If the jury found two causes directly contributing to the damages, it would determine the relative degrees of negligence accordingly, including consideration of the elements of the last clear chance. It would be illogical to have the jury first determine that plaintiff and defendant were both negligent (including the element of direct causation of the damage), and then—under the last clear chance theory—again address the question indirectly by considering whether or not plaintiff's negligence was the *sole* proximate cause of the damage.

The apportionment of damages under the comparative negligence statute makes unnecessary the doctrine of last clear chance.[12]

12. The last clear chance doctrine does not apply in the following comparative negligence states: Alaska, California, Connecticut, Flori-

da, Maine and Wisconsin (*Kaatz v. State,* Alaska, 540 P.2d 1037 (1975); *Li v. Yellow Cab Company of California,* 13 Cal.3d 804, 119 Cal.

## LOST INVESTMENT DAMAGES

■ Plaintiffs offered testimony of an economist as to cost of investment of the parents in the birth and rearing of the deceased as a measure of damages under the wrongful death act. Although Michigan has accepted this "lost investment" theory, *Wycko v. Gnodtke,* 361 Mich. 331, 105 N.W.2d 118 (1960); *Wilson v. Modern Mobile Homes, Inc.,* 376 Mich. 342, 137 N.W.2d 144, we consider the approach to be inconsistent with accepted measures of such damages. We have allowed consideration of future earnings as a proper factor in arriving at such damages. *Coliseum Motor Co. v. Hester,* 43 Wyo. 298, 3 P.2d 105 (1931); *Muir v. Haggerty,* 77 Wyo. 280, 314 P.2d 948 (1957). To allow recovery for loss of the fruit of the "investment" and at the same time allow recovery of the investment itself is somewhat inconsistent. Further, the statute allows recovery for the benefit of other than parents, i. e., intestate heirs, *Muir v. Haggerty, supra,* and for loss of the parent itself, *Jordan v. Delta Drilling Company,* Wyo., 541 P.2d 39 (1975). The wrongful death statute does not preclude a different measure of damages for different beneficiaries, but it does place a heavy burden upon a jury to assess damages, "including damages for loss of probable future companionship, society and comfort." The use of the "lost investment" theory could unduly emphasize the "investment" aspect. The simple facts are that the loss of companionship, society and comfort could be greater for a small child in which there has been far less "investment" than in an 18-year-old, and that the loss of companionship, society and comfort could be just as great, or greater, to parents of a low-income family who have been unable to "invest" a great deal in their child as such is to parents of wealth who have spent a large amount on their child. In short, we can not accept an "investment" of the money spent in birth and rearing of children as a proper measure of damages under the wrongful death statute.

## CONCLUSION

The question of willful and wanton misconduct should have been submitted to the jury. If it found such on the part of defendant, plaintiffs should have been awarded (1) pecuniary damages without adjustment for comparable negligence, and (2) exemplary damages in an amount that is fair and just. If it did not find willful and wanton misconduct on the part of defendant, and did not find gross negligence on the part of defendant, the verdict should have been for defendant. If it did not find willful or wanton misconduct on the part of defendant, but did find gross negligence on his part, it should have apportioned the degrees of negligence (if plaintiffs were found to be negligent) between the parties, and it should have determined the amount of pecuniary damages suffered by plaintiffs.

Reversed and remanded.

ROSE, Justice, specially concurring.

I fully agree with the majority's conclusion that there was sufficient evidence for a jury to determine, under proper instructions, that the defendant's acts constituted willful and wanton misconduct. Having said this, I fail to understand how the majority can proceed to justify its abrogation of the last-clear-chance doctrine, given the facts of this case. Nor am I comfortable with the necessity to discuss the efforts of our comparative-negligence statute in a case involving evidence of willful and wanton misconduct.

Rptr. 858, 532 P.2d 1226 (1975); § 52–572h(c) Conn.Gen.Stat. (1975); *Hoffman v. Jones,* Fla., 280 So.2d 431 (1973); *Cushman v. Perkins,* Me., 245 A.2d 846 (1968)). It does apply in the following comparative negligence states: Georgia, Nebraska, New Hampshire and South Dakota (*Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665, 88 S.E.2d 6 (1955); *Whitehouse v. Thompson,* 150 Neb. 370, 34 N.W.2d 385 (1948); *Macon v. Seaward Const. Co., Inc.,* (1st Cir. 1977), 555 F.2d 1; *Hanson v. N. H. Pre-Mix Concrete, Inc.,* 110 N.H. 377, 268 A.2d 841 (1970); *Vlach v. Wyman, supra*).

This court has historically subscribed to the appellate-review doctrine holding that we will affirm a trial court decision on any legal ground *appearing in the record*. See, *Board of Trustees, etc. v. Holso,* Wyo., 584 P.2d 1009 (1978); and *Peterson v. Johnson,* 46 Wyo. 473, 28 P.2d 487 (1933). We also have subscribed to the view that it is unnecessary—and I would add *improper*—to discuss questions, although they may be of academic interest or potentially determinative in certain instances, which are not requisite to a determination of the case at hand. *Wallace v. Casper Adjustment Service,* Wyo., 500 P.2d 72 (1972); and *Druley v. Houdescheldt,* 75 Wyo. 155, 294 P.2d 351, reh. den. 75 Wyo. 155, 296 P.2d 251 (1956). An exception to this rule exists to some extent where there are questions which are likely to arise at a new trial resulting from this court's reversal of a trial court decision. *Kwallek v. State,* Wyo., 591 P.2d 895 (1979). The proper application of these rules is critical to the achievement of the judicial self-control that is an inherent part of our function as a reviewing court. Otherwise, an appellate court wallows in unpredictability and misdirection.

In the present case, the majority eliminates the doctrine of last-clear-chance in Wyoming without even a whisper as to how the doctrine applies to the facts of this case. If the doctrine has no application, thereby presenting no likelihood that it will be a question at the new trial herein, what justification is there to discuss the continued viability of last-clear-chance—especially when there is an admitted divergency among the courts that have had this question properly before them? Some would argue that we do a disservice to litigants and to the trial Bar and Bench by not disposing of every conceivable issue which might come to our minds, even though not raised by the litigants or dispositive of the questions properly before us. But lawyers and judges must remember that once an appellate court adopts such a policy, the power of the court becomes rampant and unbridled—and frightening. Such an appellate policy requires that lawyers and trial judges must anticipate that litigation will be resolved here on issues which were neither tried nor argued below—issues, if you will, with respect to which lawyers have not had an opportunity to represent their clients, and issues which trial judges have not had an opportunity to resolve. It is said that our failure to dispose of all possible issues whether properly raised or not results in a waste of time and money. But, do we not do a greater disservice, and thereby create an atmosphere of judicial expediency and unpredictability, when we bypass the traditional requirements of insisting that the trial court first address the issues before we accept them for decision, and of demanding that trial attorneys adequately frame the questions to be resolved? Ours is a two-pronged responsibility, one of which is to dispose of the cases before us, and the other is to establish sound principles of law for use in future cases. When initial trial court determination of the applicable law is absent, and when the clash between opposing parties is wanting, this court—in deciding an issue—places itself in the position of handing down law based solely on visceral reaction and preference. In so acting, we abandon our traditional purposes as a reviewing court.

My position in this regard is not unlike my abhorrence of the court's discussion and application of the doctrine of judicial estoppel in cases where it has not been contemplated by the trial court or the parties. See, *Snell v. Ruppert,* Wyo., 582 P.2d 916, 918–919 (1978) (Rose, J., specially concurring); and *Allen v. Allen,* Wyo., 550 P.2d 1137, 1152–1154 (Rose, J., dissenting). Suffice it to say that, in this case, I see no possible application of the last-clear-chance doctrine and, therefore, see no justification for abrogation of the doctrine at this time.

With respect to the majority's discussion of the effect of comparative negligence in a willful-and-wanton-misconduct case, it needs to be pointed out that there was no discussion in the trial court of this point as a ground for refusing the misconduct in-

struction or the verdict form that addressed exemplary damages. In fact, the contemplated verdict form is not even a part of the record on appeal. Furthermore, neither of the parties to this appeal address this ground or suggest that it would be a basis justifying an affirmance of the trial court's refusal to instruct on willful and wanton misconduct and exemplary damages. The only mention of the ground was a comment in the appellants' brief to the effect that the *refusal* to instruct on these matters was prejudicial because the defense of comparative negligence is not available in such cases. Nevertheless, the majority lifts the comment out of context and uses it as a justification to "make some law." Again, I cannot subscribe to such an approach. The majority's discussion is premised entirely on a "straw-man" issue, set up so that the majority can knock it down and thereby establish binding principles for the future.

I would have required input from the Bench and Bar before deciding these important questions.

McCLINTOCK, J., specially concurring.

I agree that there was evidence of willful and wanton misconduct on the part of the defendant which was sufficient to require the inclusion of that issue in those submitted to the jury. I therefore concur in the reversal of the judgment and remand for new trial. However, appellant has raised the further issue that, even upon the theories submitted to the jury, and considering the possibility that the decedent negligently contributed to the accident by purchasing of the beer consumed by the two men, the defendant nevertheless had the last clear chance to avoid the accident. Under earlier law, and if so found by the trier of fact, this would have had the result of excusing or abrogating decedent's negligence. That possibility, even with submission of willful-and-wanton-misconduct issue to the jury, remains a possibility upon the new trial and appellant's argument that last clear chance has not been abrogated by

our comparative negligence remains relevant.

The question at this time is whether we should decide for this state a legal proposition on which outside authorities are not in agreement and which may or may not pertain to the facts as developed at a future trial. I can sympathize with the majority's position that we should settle the issue at this time but while appellant's argument as to the relation of the two principles has been advanced at some length and with considerable persuasion, counsel for appellee has merely observed that last clear chance is not applicable. Mr. Justice Rose agrees with that view and I agree with him that such an important question should not be decided upon an inadequate factual base.

We have said that the rule of last clear chance "entails a clear and apparent opportunity to avoid the result." *Hendrickson v. Heinze,* Wyo., 541 P.2d 1133, 1136 (1975), citing *Dr. Pepper Company v. Heiman,* Wyo., 374 P.2d 206, 212 (1962). In *Borzea v. Anselmi,* 71 Wyo. 348, 258 P.2d 796, 802 (1952), we found a definition of the rule in a statement from the Supreme Court of Florida in *Merchants' Transp. Co. v. Daniel,* 109 Fla. 496, 149 So. 401, 403 (1933):

> "The party who last has a clear opportunity of avoiding an accident, notwithstanding the negligence of his opponent, is considered solely responsible for it. Such is a simple statement of the doctrine of 'the last clear chance.' "

Assuming that upon a new trial there might be evidence which would justify consideration of the rule of last clear chance, I would not say that the majority has gone astray in its discussion of the applicability of the rule. My difficulty lies in the fact that based upon the record now before us I can find no factual basis for consideration of the rule. I think that the evidence so far presented falls far short of the requirements which we have expressed. I fail to see where it can be said that defendant driving in any but a willful and wanton manner could be said to have seen the danger to which the decedent had negligently

exposed himself and had a clear opportunity to avoid the accident. If he was willful and wanton the question of last clear chance as well as comparative negligence is of no importance. When two points are presented, one of which is completely dispositive of the appeal and another of which is not necessary to the reversal but *may* be of importance upon a retrial, it is difficult to say how far the court should go, but in this case I am on the side of abstinence. I express no opinion as to whether we should consider last chance as eliminated, but I do not think that we should enter into that discussion in this case.